**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 Sepulveda Blvd, Suite 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice* forthcoming)
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANTHONY MALKO, *individually and on behalf of all others similarly situated,*

*Plaintiff,*

v.

GNC HOLDINGS, LLC,

*Defendant.*

Case No. 2:26-cv-01833-MCS-AJR

**RESPONSE IN OPPOSITION TO DEFENDANT GNC HOLDINGS, LLC'S APPLICATION FOR LEAVE TO FILE UNDER SEAL PURSUANT TO L.R. 79-5.2.2(a)**

Complaint served: March 4, 2026
Trial date: None set

Judge: Hon. Mark C. Scarsi
Courtroom: 7C

Plaintiff Anthony Malko ("Plaintiff") respectfully submits this Opposition to GNC Holdings, LLC's ("GNC LLC" or "Defendant") Civil Local Rule 79-5.2.2 Application for Leave to File Documents Under Seal (ECF No. 22, the "Sealing Application"). Defendant's Sealing Application should be denied in its entirety because it does not provide the compelling reasons required to justify sealing and its request to seal the entirety of an outdated exhibit is not narrowly tailored.

## I. FACTUAL BACKGROUND

This case concerns GNC LLC's systematic and knowing transmission of Americans' sensitive behavioral data to foreign adversaries. ECF No. 1 ¶¶ 9, 11. When consumers visited GNC LLC's website to browse and purchase health products, GNC LLC's network of tracking technologies silently intercepted their browsing activity—capturing persistent identifiers, full-string URLs, IP addresses, advertising IDs, and cookie data—and routed that information to its Chinese parent, Harbin Pharmaceutical Group Holding Co., Ltd. ("Harbin"). *Id.* ¶¶ 12-13. Harbin is a Chinese-controlled entity headquartered in the People's Republic of China, subject to Chinese laws requiring companies to secretly cooperate with state intelligence and security services and to grant authorities unrestricted access to user data. *Id.* ¶¶ 26-30.

GNC LLC's conduct violates the U.S. Department of Justice's Bulk Sensitive Data Transfer Rule ("BSDR"), 28 C.F.R. Part 202—a national security regulation that expressly prohibits U.S. companies from utilizing tracking technologies to transfer Americans' bulk sensitive personal data—including but not limited to IP addresses, advertising IDs, and cookie data—to entities tied to countries of concern, including China. *Id.* ¶¶ 1, 31-85. It also violates the Electronic Communications Privacy Act, the California Invasion of Privacy Act, California's Unfair Competition Law, and other federal and state laws. *Id.* ¶ 107-244.

In connection with their Answer and Affirmative Defenses, GNC LLC seeks to seal the entirety of one exhibit—a 2018 Letter of Assurance ("LOA") between GNC Holdings, Inc., Harbin, and the Committee on Foreign Investment in the United States

("CFIUS"). *See* ECF No. 24 ¶¶ 247-54;[1] *see also* GNC Holdings, Inc., Current Report (Form 8-K) (Sept. 13, 2018).[2]

Defendant contends that the LOA contains "details of GNC's data governance, cybersecurity practices, network segregation and compliance controls implemented by GNC as part of a CFIUS action concerning the GNC/Harbin transaction" and if this information were disclosed "it could have serious negative consequences on GNC's general cybersecurity framework and could potentially inflict broader, negative consequences on the national security interests identified by CFIUS." ECF No. 22.

What Defendant omits is that the 2018 LOA concerns an outdated investment agreement addressing a different entity under a corporate structure that no longer exists. GNC Holdings, Inc., Harbin, and CFIUS entered into the 2018 LOA in connection with Harbin's 2018 acquisition of 40% of GNC Holdings, Inc.'s equity interests. *See* ECF No. 24 ¶¶ 247-49. In 2020, GNC Holdings, Inc. filed for bankruptcy. *In re GNC Holdings, Inc. et al.*, Case No. 20-11662 (Bankr. D. Del.). As a part of the bankruptcy proceeding, GNC Holdings, Inc. sold substantially all of its assets free and clear of all claims, liens, liabilities, rights, interests and encumbrances. *Id.* at ECF No. 1202. As a part of that transaction, GNC Holdings, Inc. transferred substantially all of its assets to GNC LLC, and 100% of the membership interests of

---

[1] Defendant's Answer and Affirmative Defenses incorrectly asserts that the "existence of the LOA exempts GNC's data collection practices from scrutiny under the BSDR pursuant to the 'exempt transactions exception' set forth therein. 28 C.F.R. § 202.508(b)(9)." ECF No. 24 ¶ 254. That exception only exempts a transaction where the mitigation agreement "contains a provision stating that it is a CFIUS action ***for purposes of this part***." 28 C.F.R. § 202.508 (b)(9) (emphasis added). The 2018 LOA—entered into seven years before the BSDR was implemented—cannot be a CFIUS action for purposes of the BSDR, 28 C.F.R. Part 202.

[2] *Available at* https://www.sec.gov/Archives/edgar/data/1502034/000162828018011815/cfiusapproval.htm

GNC LLC were transferred to Harbin (through a subsidiary). *Id.*

The 2018 LOA addresses only Harbin's 2018 minority equity investment. *See* ECF No. 24 ¶ 247-50. Under 50 U.S.C. § 4565(a)(4)(B), "covered transactions" subject to CFIUS review include two categorically distinct types of foreign investment: (i) transactions that "could result in foreign control of any United States business," *id.* § 4565(a)(4)(B)(i), and (ii) certain non-controlling investments in certain categories of U.S. businesses affording the foreign person specified access, rights, or involvement, *id.* § 4565(a)(4)(B)(ii). The 2018 LOA was negotiated and entered in connection with Harbin's acquisition of a 40% minority equity interest in GNC Holdings, Inc.—a non-controlling investment. *See* ECF No. 24 ¶ 247. When Harbin subsequently acquired substantially all of GNC Holdings, Inc.'s assets through its acquisition of 100% of GNC LLC, that transaction—resulting in full foreign control of a U.S. business—constituted an entirely new and separate "covered control transaction" under 50 U.S.C. § 4565(a)(4)(B)(i), subject to its own independent scrutiny and mitigation requirements. *See* 31 C.F.R. § 800.305 ("If…a foreign person that did not acquire control of the U.S. business in the prior transaction is a party to the later transaction, the later transaction may be a covered transaction."). The Sealing Application points to no LOA or any other CFIUS mitigation instrument entered in connection with the 2020 acquisition.

Independently, it is unclear whether the obligations contained in the 2018 LOA even bind GNC LLC. The LOA was entered into by GNC Holdings Inc. GNC Holdings Inc.'s assets were acquired by GNC LLC pursuant to a sale under Section 363 of the Bankruptcy Code, 11 U.S.C. § 363(b), (f). *In re GNC Holdings, Inc. et al.*, Case No. 20-11662, ECF No. 1202. Assets sold through a Section 363 sale are sold free and clear of any liens, claims, interests, and encumbrances, including successor liability. 11 U.S.C. § 363(f)(1)-(5). The Sealing Application offers no explanation of how a contractual commitment made by GNC Holdings Inc. to a federal regulatory body in 2018—in connection with a transaction involving a corporate structure that

no longer exists—was assumed by GNC LLC as part of the bankruptcy sale.

## II. LEGAL STANDARD

The U.S. Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). In the Ninth Circuit, courts considering a sealing request "start with a strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). This strong presumption is based on, among other things, the interest in "promoting the public's understanding of the judicial process and of significant public events[.]" *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986).

Courts distinguish judicial records attached to dispositive filings from those records attached to non-dispositive filings. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). A filing is dispositive when it is "is more than tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). For materials related to dispositive motions, there is a general presumption in favor of access to public records and documents. *Nixon*, 435 U.S. 589 at 597. That presumption can be overcome only where a designating party articulates "compelling reasons" for maintaining the confidentiality of the documents and seeks relief that is narrowly tailored to the protected interest. *See Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 667-79 (9th Cir. 2010). For nondispositive filings, a lesser standard applies and the party must show "good cause" for filing documents under seal. *Pintos*, 605 F.3d at 678.

An answer is a dispositive filing, requiring Defendant to show "compelling justifications" for filing associated documents under seal. *Universal Ent. Corp. v. Aruze Gaming Am., Inc.*, 2023 WL 270130, at *1 (D. Nev. Jan. 18, 2023). This is a stringent standard, and it requires more than "hypothesis or conjecture." *Kamakana,* 447 F.3d at 1179. In a case where a compelling reason is articulated, "the court must

then 'conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret.' " *Id*. at 1097 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

## III. ARGUMENT

### A. Defendant Did Not Comply with this Court's Standing Order.

As an initial matter, Defendant's Sealing Application can be denied for failure to comply with this Court's Standing Order. *See* ECF No. 20, Initial Standing Order for Civil Cases Assigned to Judge Mark C. Scarsi at § 11 (providing requirements for motion to seal). This Court's Standing Order required Defendant to "meet and confer … at least seven calendar days prior to the filing of an application … to determine if they can agree on the proposed under seal filing[.]" *Id.* But Defendant only notified Plaintiff that it intended to file documents under seal on the day that it filed its Sealing Application. *See* ECF No. 20. Defendant's Sealing Application should be denied for failure to comply with this Court's Order.

### B. Defendant's Sealing Application Does Not Offer Any Compelling Reasons to Depart from the Presumptive Rule of Public Access.

Defendant's non-compliance with this Court's Order aside, Defendant's Sealing Application should be denied because it fails to satisfy its heavy burden to provide compelling reasons to justify sealing for several independent reasons.

*First*, Defendant relies on conclusory assertions that disclosure of the materials it seeks to seal "could have serious negative consequences on GNC's general cybersecurity framework and could potentially inflict broader, negative consequences on the national security interests identified by CFIUS." ECF No. 22." ECF No. 22. But mere conclusory allegations like this are not sufficient; the proponent must state a specific reason why sealing is warranted, including supporting facts. *Glob. BTG LLC v. Nat'l Air Cargo, Inc.*, No. 11-cv-01657, 2012 WL 12882384, at *3 (C.D. Cal. Dec. 3, 2012) ("Although it is often appropriate to seal 'sources of business information that might harm a litigant's competitive standing,' the applicant must

provide a specific, articulated explanation as to why the information must be sealed, and adduce sufficient facts to support its explanation.") (first citing *Nixon*, 435 U.S. at 598; then citing *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011)). GNC LLC's sealing justification is precisely the kind of conclusory assertion courts have found insufficient. GNC LLC adduces no facts whatsoever to support is predictions. It does not identify which specific provisions of the LOA would cause harm if disclosed, explain the mechanism by which disclosure to the public docket would compromise any cybersecurity framework, or submit a declaration from a person with knowledge attesting to any present operational sensitivity. The phrase "could potentially inflict broader, negative consequences" is precisely the kind of speculative, hypothetical injury that the compelling reasons standard forecloses. *See Kamakana*, 447 F.3d at 1179. The national security invocation fares no better. GNC LLC does not represent that any government agency has requested confidentiality, that the letter remains operative or enforceable, or that CFIUS itself has taken any position on disclosure. To the contrary, any confidentiality relating to CFIUS filings is expressly subject the exception that such information may be made public "as may be relevant to any administrative or judicial action or proceeding." 31 C.F.R. § 800.802(b)(1). A litigant cannot manufacture compelling reasons by invoking national security in the abstract—it must connect that interest to specific, articulable harm tied to the actual contents of the document sought to be sealed.

Similarly, Defendant attempts to manufacture cybersecurity concerns where none exist by relying on inapposite case law. ECF No. 22 at 2 (citing *United States ex rel. Markus v. Aerojet Rocketdyne Holdings, Inc.*, No. 2:15-cv-02245, 2021 WL 4951788, at *2 (E.D. Cal. Oct. 25, 2021) (citing cases)). Although courts have found that cybersecurity can be a compelling reason to seal documents, they have only done so where Defendant articulates how the specific document might lead to a specific cyber security vulnerability. For example, in *Aerojet* and the cases that it cites, the sealing party was able to explain how the information sought to be sealed could be

"used by bad actors to further attack and breach" computer systems, *Connor v. Quora, Inc.*, No. 18-CV-07597, 2020 WL 8474750, at *2 (N.D. Cal. Oct. 26, 2020), or could "allow cyberattackers greater opportunity to defeat" cybersecurity defenses. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017). Here, by contrast, Defendant has not articulated, and cannot articulate, how the specific provisions in the 2018 LOA could be used by bad actors for purposes of a cybersecurity breach whatsoever. Defendant cannot just say the word "cybersecurity" and satisfy the compelling justifications standard.

*Second*, the materials Defendant seeks to seal include information that is close to a decade old, undermining any argument that disclosure would result in competitive disadvantage or prejudice. Defendant seeks to seal a letter from Harbin's 2018 acquisition of a minority interest in GNC Holdings, Inc.—but that entity sold its assets, and Harbin now owns 100% of GNC LLC. It is well established that such dated "information is not *per se* subject to sealing, particularly where the passage of time has ameliorated the sensitivity of the information." *Tan v. Konnektive Rewards, LLC*, No. 20-cv-1082, 2023 WL 2336893, at *4 (S.D. Cal. Mar. 2, 2023) (denying defendants' request to seal where the "information in question is three to four years out of date, and Defendants have not supported the assertion that their interest in the confidentiality of this information outweighs the public's right of access with any specific factual findings."); *see also Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17-cv-555, 2018 WL 6601671, at *2 (S.D. Cal. Dec. 14, 2018) (denying defendants' request to seal information that is several years old where "[d]efendants have not shown why this outdated information would have any effect on [defendant's] competitive standing at the present"). GNC LLC has offered no explanation as to why this historical information warrants protection or terms in years-old documents would prejudice it in ongoing or future business operations.

This is particularly true here, where much of the information GNC LLC seeks to seal has been superseded by subsequent developments, including in connection

with GNC Holdings Inc.'s 2020 bankruptcy, and Harbin's 100% acquisition of GNC LLC from bankruptcy. Courts within the Ninth Circuit have denied applications to seal information in agreements that have been superseded where defendants fail to demonstrate its relevancy in the current market or how it would cause prejudice today. *See, e.g., Fekrat v. United States*, No. 13-cv-00594, 2013 WL 12133643, at *2 (C.D. Cal. July 9, 2013) (denying government's motion to seal, noting that "it is less clear that the older exhibit contains information that is relevant in the current market"); *In Re NCAA Student-Athlete Name and Likeness Licensing Litigation*, No. 09-CV-01967, 2012 WL 4497775, at *4 (N.D. Cal. Sept. 28, 2012) (denying motion to seal superseded agreements which contain outdated language where there were no specific examples given as to how disclosure of information in agreements entered into years ago would cause prejudice today). Here, the letter describes what GNC Holdings, Inc. implemented in connection with a transaction that has since been restructured through bankruptcy; it says nothing about what GNC LLC does today. Because Defendant offers no explanation for how disclosure of these seemingly superseded terms would disadvantage Defendant in the future, it has not met its burden.

*Fourth*, Courts within the Ninth Circuit deny requests to seal non-public information where a party fails to demonstrate how public access to the information would allow it to become "a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Cochoit v. Schiff Nutrition Int'l, Inc.*, No. 16-cv-01371, 2018 WL 1895695, at *2-3 (C.D. Cal. Apr. 19, 2018) (denying application to seal non-public consumer research study containing confidential and proprietary information where party failed to indicate what particular information was confidential or proprietary) (citing *Kamakana*, 447 F.3d at 1179); *see also Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. 20-cv-9091, 2021 WL 5279575, at *2 (C.D. Cal. Sept. 21, 2021) (denying application to seal documents and information reflecting the parties' non-public and detailed financial information where "[d]efendant's wholly

conclusory allegations of prospective competitive harm which may or could result from the public filing of the documents is not the type of particularized showing of harm necessary to support a finding that compelling reasons exist to justify sealing"). The Sealing Application fails for the same reason. GNC LLC does not identify which specific provisions of the letter could be weaponized for an improper purpose, explain how a public court filing would place the described cybersecurity details in the hands of a bad actor, or articulate how disclosure would gratify private spite, promote scandal, or release an operative trade secret. Critically, GNC LLC does not even represent that it continues to abide by the terms of the LOA, that the compliance controls described therein remain in effect, or that the cybersecurity architecture the letter references has any continued relevance to GNC's current operations. A party cannot invoke the specter of national security to justify sealing a nearly eight-year-old letter memorializing commitments made under a corporate structure that no longer exists, while offering no facts to connect that letter to any present improper use.

*Fifth*, the LOA's confidentiality provisions are also insufficient justification to grant a motion to seal. *Bernstein v. Target Stores, Inc.*, No. 13-CV-01018, 2013 WL 5807581, at *3 (N.D. Cal. Oct. 28, 2013) (finding confidentiality provisions insufficient justification to grant a motion to seal). GNC invokes the CFIUS process itself as a source of implied confidentiality, asserting that the letter was submitted "as part of a CFIUS action" and that disclosure could "potentially inflict broader, negative consequences on the national security interests identified by CFIUS." ECF No. 22. But GNC points to no express confidentiality provision in the LOA itself, no protective order or government directive requiring its continued confidentiality, and no representation that CFIUS has ever requested—let alone required—that GNC maintain the document under seal in civil litigation. To the contrary, any confidentiality relating to CFIUS filings is expressly subject the exception that such information may be made public "as may be relevant to any administrative or judicial action or proceeding." 31 C.F.R. § 800.802(b)(1). The mere fact that a document

originated in a regulatory process that carries general confidentiality norms does not transform it into a document that must be sealed in federal court litigation—particularly where, as here, the underlying transaction has been superseded by bankruptcy and the corporate structure to which the letter applied no longer exists.

**C. Defendant's Sealing Application Is Not Narrowly Tailored.**

Finally, Defendant's sealing application should be denied for the independent reason that the request to seal the 2018 LOA in its entirety, as opposed to redacting specific portions that contain purported confidential information, is not narrowly tailored. *See, e.g., Audionics Sys. Inc v. AAMP of Fla. Inc*, No. 12-10763, 2013 WL 12129952, at *3 (C.D. Cal. Dec. 6, 2013) ("[Defendant's] request to seal the documents in their entirety is also overbroad. It appears that any confidential information contained in the documents could be easily redacted, and that sealing the documents in their entirety is unnecessary."); *Griffo v. Oculus VR, Inc.*, No. 15-1228, 2018 WL 11352472, at *2 (C.D. Cal. Sept. 20, 2018) ("The Court cautions that Defendants must narrowly tailor the request. The Court will not seal entire exhibits or pages of relevant testimony or financial documents[.]"). Local Rule 79-5.2.2(a)(ii) requires that requests be "narrowly tailored to seal only the sealable material." Defendant has made no attempt to identify which specific provisions of the 2018 LOA purportedly warrant protection, let alone to propose targeted redactions. Where, as here, a party seeks to seal a document wholesale without demonstrating that redaction would be inadequate, the request does not satisfy the narrow-tailoring requirement and must be denied.

## IV. CONCLUSION

Defendant's Sealing Application fails to demonstrate compelling reasons to seal. Thus, the Court should deny the application in its entirety. At the very least, the Court should deny Defendant's sealing application without prejudice and require Defendant to resubmit their application with narrowly tailored redactions.

Dated: April 29, 2026

ALMEIDA LAW GROUP LLC

By: */s/ Victor J. Sandoval*
Victor J. Sandoval
David S. Almeida

*Attorneys for Plaintiff*
ANTHONY MALKO

**L.R. 11-6.1 Certificate of Compliance**

The undersigned, Counsel of record for Plaintiff, certifies that this brief contains 3,386 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 29, 2026

By: *<u>/s/ Victor J. Sandoval</u>*
Victor J. Sandoval