MICHAEL J. DUVALL (Bar No. 276994)
michael.duvall@dentons.com
POOJA L. SHAH (Bar No. 330550)
pooja.l.shah@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924

FRIDRIKH V. SHRAYBER (admitted *pro hac vice*)
fred.shrayber@dentons.com
ALEXIS B. THURSTON (admitted *pro hac vice*)
lexie.thurston@dentons.com
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Tel: (412) 297-4900

Attorneys for Defendant
GNC HOLDINGS, LLC

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY MALKO, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br>v.<br><br>GNC HOLDINGS, LLC,<br><br>Defendant. | Case No. 2:26-cv-01833-MCS-AJR<br><br>**DEFENDANT GNC HOLDINGS, LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 27, 2026<br>Time: 9:00 a.m.<br>Judge: Hon. Mark C. Scarsi<br>Ctrm: 7C<br><br>Trial Date: None Set |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Monday, July 27, 2026, at 9:00 a.m. in Courtroom 7c of the above-captioned Court located at 50 W 1st St, Los Angeles, CA 90012, Defendant GNC Holdings, LLC ("GNC") will and hereby does move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and for dismissal due to lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) as to Plaintiff Anthony Malko's ("Malko") Complaint.

Judgment should be entered in GNC's favor as to Malko's Complaint because, based solely on the matters pled in the Complaint and incorporated by reference therein, (1) Malko lacks Article III standing to bring his claims; and (2) Malko has failed to allege facts sufficient to support his claims under ECPA, CIPA or California common law, and his allegations under the Bulk Data Transfer Rule cannot save his otherwise deficient pleading.

This Motion is based on this Notice, the Memorandum and Point of Authorities below, the pleadings on file, and such other matters as the Court may consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 6, 2026 and at which GNC and Malko discussed the substance and potential resolution of the filed motion by videoconference.

Dated: May 26, 2026

Respectfully submitted,

**DENTONS COHEN & GRIGSBY P.C.**

By: */s/ Fridrikh V. Shrayber*
Fridrikh V. Shrayber (*pro hac vice*)

Attorneys for Defendant
GNC HOLDINGS, LLC

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 9

II. FACTUAL BACKGROUND .......... 10

III. LEGAL STANDARD .......... 11

IV. LEGAL ARGUMENT .......... 12

A. Plaintiff Lacks Article III Standing .......... 12

1. Plaintiff Has Failed to Allege a Concrete Privacy Injury .......... 12

2. Plaintiff Has Failed to Allege a Concrete Economic Injury .......... 14

B. Plaintiff's BSDR Allegations Cannot Save His Otherwise Deficient Claims .......... 15

1. The Court Should Abstain from Applying the BSDR as Malko Requests .......... 15

2. Plaintiff Fails to State a BSDR Violation .......... 18

a. Plaintiff Fails to Allege Any Facts Supporting the Inference that GNC has Transferred any Data to Harbin. .......... 18

b. Plaintiff's Complaint Precludes a BSDR Violation. .......... 21

i. Data-Brokerage Transaction .......... 21

ii. Requisite Security Controls .......... 22

3. Malko Cannot Rely on an Alleged BSDR Violation to Circumvent the Party Exception under ECPA and CIPA .......... 23

c. No "Crime" .......... 23

d. No "Tortious" Action .......... 24

e. No "Purpose" .......... 25


DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

f. Plaintiff's Wiretapping Claims Fail. .............................. 26

i. The Party Exception Bars Malko's CIPA and ECPA Claims. .............................. 26

ii. Malko's Claims Under Section 632 Fail as a Matter of Law .............................. 26

g. Plaintiff's Remaining Claims Fail. .............................. 27

i. Invasion of Privacy/Intrusion Upon Seclusion .............................. 27

4. CDAFA .............................. 29

5. Unfair Competition Law .............................. 30

6. Unjust Enrichment .............................. 31

V. CONCLUSION .............................. 31


DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Selma Convalescent Hosp.*, 64 Cal. Rptr. 3d 250 (Cal. Ct. App. 2007) .......... 16, 17

*In re Apple Data Privacy Litig.*, No. 5:22-cv-07069-EJD, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .......... 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 21

*Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 14

*Dellasala et al. v. Samba TV, Inc.*, 3:25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 25

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 27

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 30

*In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 15

*In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) .......... 11

*Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 27

*Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 30, 31

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017)....................31

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................28

*Hazel v. Prudential Fin., Inc.*,
No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023)....................31

*Honchariw v. Cnty. of Stanislaus*,
530 F. Supp. 3d 939 (E.D. Cal. 2021)....................11

*Hooker v. Simon*,
No. 1:06-CV-00389, 2010 WL 3516662 (E.D. Cal. Sept. 7, 2010)....................20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................28

*Johnson v. IPIC Theaters, LLC*,
No. 5:24-CV-01769-ODW, 2025 WL 2963021 (C.D. Cal. Sept. 30, 2025), *appeal dismissed*, No. 25-6387, 2025 WL 4050853 (9th Cir. Nov. 24, 2025)....................11

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025)....................12, 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)....................13

*LaCourt v. Specific Media, Inc.*,
No. SACV 10–1256–GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)....................15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................28

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................23

*Mezger v. Bick*,
280 Cal. Rptr. 3d 720 (Cal. Ct. App. 2021)....................26

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 954 (N.D. Cal. 2014) .......... 29

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .......... 30

*Pampena v. Musk*,
705 F. Supp. 3d 1018 (N.D. Cal. 2023) .......... 20

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 26

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 13, 14

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 27, 28

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2024 WL 1486139 (N.D. Cal. Apr. 5, 2024) .......... 29

*S. Cal. Pizza Co. v. Certain Underwriters at Lloyd's, London Subscribing to Policy No. 11EPL-20208*,
252 Cal. Rptr. 3d 635 (Cal. Ct. App. 2019) .......... 24

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 25

*Selah v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 28

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 28

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 25

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .......... 28

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 12

*Swearingen v. Yucatan Foods, L.P.*,
59 F. Supp. 3d 961 (N.D. Cal. 2014).......... 17, 18

*Thomas v. Papa John's Int'l, Inc.*,
No. 24-3557, No. 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025).......... 23, 26

*U.S. v. Mousavi*,
604 F.3d 1084 (9th Cir. 2010).......... 24

*In re USA Today Co., Inc. Internet Tracking Litigation*,
No. 24-cv-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026).......... 13, 14

*Vinluan-Jularbal v. Redbubble, Inc.*,
No. 221CV00573JAMJDP, 2021 WL 4286539 (E.D. Cal. Sept. 21, 2021).......... 30

*Zocco v. Nelnet, Inc.*,
No. 25-cv-04470-NW, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026).......... 24

**Statutes**

18 U.S.C.
§ 2511(2)(d).......... 23, 26

50 U.S.C.
§ 1705(c).......... 23

California Penal Code
§ 632(a).......... 26

**Other Authorities**

28 C.F.R.
§§ 202.202, 202.203, 202.104 .......... 16
§ 202.210 .......... 19
§ 202.228 .......... 22
§ 202.301 .......... 21
§ 202.401 .......... 21, 22, 23
§ 202.1302(a).......... 16

90 Fed. Reg. 1643 (Jan. 8, 2025) (to be codified at 28 C.F.R. Part 202) ................ 24

Federal Rules of Civil Procedure
Rule 12(b)(1) ........................................................................................ 11
Rule 12(b)(6) ........................................................................................ 11
Rule 12(c) ........................................................................................ 11, 20

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant GNC Holdings, LLC ("GNC") files this Memorandum in Support of its Motion for Judgment on the Pleadings (the "Motion") against Plaintiff Anthony Malko ("Plaintiff" or "Malko").

## I. INTRODUCTION

This case is yet another example of the recent scourge of "privacy" lawsuits that attempt to weaponize the civil judiciary process to extort money from defendants for innocuous business practices. Like countless other complaints of this type, the Plaintiff alleges that he visited GNC's public website, was shown a cookie banner, bought pre-workout supplements, and had standard analytics data collected in exactly the manner disclosed. Numerous courts have held that such allegations do not state any viable causes of action. So, this complaint adds a new spin: Plaintiff attempts to recharacterize those routine e-commerce analytics into a "national security controversy" by alleging – without any factual support whatsoever – that GNC has violated the Bulk Sensitive Data Rule ("BSDR") by transferring certain unidentified data to its Chinese corporate parent. Plaintiff relies on those bald allegations to establish the existence of a "crime" or "tort" in order to circumvent the "party exception" that is fatal to his ECPA and CIPA claims, and to support the existence his otherwise deficient UCL and invasion of privacy claims. Strip away Plaintiff's inflammatory BSDR allegations — which do not apply, are not privately enforceable, and cannot serve as a predicate for any claim — and what remains is a conclusory complaint about a consumer who visited GNC's website and bought some supplements while being subject to routine and legitimate data analytics practices. The Complaint does not set forth any actionable claims, and it should be dismissed by the Court pursuant to Fed. R. Civ. P. 12 (b)(1) and (c).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## II. FACTUAL BACKGROUND1

GNC is a retailer of health and nutritional products, including vitamins, supplements and sports nutrition. (Compl. (ECF 1) ¶ 24; First Amended Answer and Affirmative Defenses ("Answer") (ECF 30) ¶ 24.) Plaintiff's Complaint largely focuses on GNC's relationship with Harbin Pharmaceutical Group ("Harbin"), which is a Chinese company headquartered in Harbin, China. (Compl. ¶ 25; Answer ¶ 25.) Plaintiff characterizes Harbin as GNC's "parent company" in his Complaint. (Compl. ¶ 8.)

Plaintiff alleges that he visited GNC's consumer-facing website, www.gnc.com (the "Website"), on "multiple occasions" "in and before December of 2025." (Compl. ¶ 87.) He alleges that while he used the Website, GNC employed certain "tracking technologies," including pixels, cookies, software development kits, and similar tools provided by vendors such as Google, Meta, TikTok and others. (*Id.* ¶¶ 52-53, 121.) Plaintiff alleges that these technologies captured certain information, such as his IP address, advertising IDs, cookie IDs, device metadata and "full URLs" on GNC's behalf. (*Id.* ¶ 197.) According to the Plaintiff, that data "can be used to assemble detailed behavioral profiles, identify psychological or financial weaknesses, and monitor individuals in sensitive roles." (*Id.* ¶ 15.) Malko alleges, on information and belief and without any *facts*, that GNC "stockpiles" this data about its Website users and shares it with Harbin. (*Id.* ¶¶ 8, 132-33, 197.) Critically, Plaintiff does not allege any *facts* permitting the inference that GNC does or has, in fact, shared or transferred any of the alleged information at issue to Harbin. Nonetheless, Malko alleges that such unidentified transfers violate the BSDR, which is a rule promulgated by the U.S. Department of

[1] GNC accepts the truth of Plaintiff's allegations solely for purposes of this Motion in accordance with Fed. R. Civ. P. 12(c).

Justice to implement Executive Order 14117 by prohibiting and restricting certain data transactions with certain countries or persons. (*Id.*)

GNC filed its Answer and Affirmative Defenses on April 24, 2026, which it subsequently amended on May 22, 2026. The pleadings are now closed and GNC's Motion is timely under Federal Rule of Civil Procedure 12(c).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In evaluating a motion under Rule 12(c), the Court applies the same standard that is used to evaluate motions to dismiss under Rule 12(b)(6). *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1083 (N.D. Cal. 2007). "[J]udgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). In resolving such a motion, the Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." *Honchariw v. Cnty. of Stanislaus*, 530 F. Supp. 3d 939, 945 (E.D. Cal. 2021) (citation omitted).

Although a lack of standing "requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Johnson v. IPIC Theaters, LLC*, No. 5:24-CV-01769-ODW (DTBX), 2025 WL 2963021, at *1 (C.D. Cal. Sept. 30, 2025), *appeal dismissed*, No. 25-6387, 2025 WL 4050853 (9th Cir. Nov. 24, 2025) (citation omitted). "The party attempting to invoke a court's jurisdiction bears the burden of proof for establishing jurisdiction." *Id.* (*citing Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995)).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## IV. LEGAL ARGUMENT

### A. Plaintiff Lacks Article III Standing.

To establish Article III standing, the Plaintiff must "allege facts demonstrating (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178 (N.D. Cal. 2025) (internal marks omitted) (*citing Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc.*, 578 U.S. at 338 (citations omitted). At the pleading stage, the Plaintiff must "clearly allege facts demonstrating" each element. *Id.* (internal marks omitted). Here, Plaintiff alleges only that he suffered "concrete and particularized harm" through the "unauthorized disclosure of personal information to a foreign entity, the invasion of his privacy, and the loss of control over how and where his browsing behavior was used and shared." (Compl. ¶ 98.) Those allegations do not establish Article III standing.

#### 1. *Plaintiff Has Failed to Allege a Concrete Privacy Injury.*

In the context of invasion-of-privacy claims, courts decide whether a plaintiff has stated a legally protectable, "concrete" injury by evaluating the nature of the information at issue. *Khamooshi*, 786 F. Supp. 3d at 1178. In other words, "[c]ourts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." *Id.* (citations omitted).

Here, Malko alleges that GNC disclosed "full-string URLs revealing the pages viewed and product viewed – and persistent identifiers – including IP addresses, advertising IDs, and cookie data – to third parties." (Compl. ¶ 12.) Courts in this Circuit routinely hold that the alleged disclosure of this type of information is not sufficient to confer Article III standing. *See, e.g.*, *Khamooshi*,

786 F. Supp. 3d at 1179 (granting motion to dismiss for lack of standing, finding that "[n]o reasonable expectation of privacy attaches to IP addresses"); *In re USA Today Co., Inc. Internet Tracking Litigation*, No. 24-cv-05150-MMC, 2026 WL 932655, at *2-3 (N.D. Cal. Apr. 6, 2026) (finding that allegations that defendant collected "unique and persistent identifiers" were insufficient to confer Article III standing); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *3-4 (N.D. Cal. June 24, 2025) (finding no Article III standing where plaintiff alleged that defendant's website "gathers device and browser information, geographic information, referral tracking, and URL tracking" and "cause[s] the extraction and transmission of data ... so [that] each person who visits the Website can be personally identified").

Indeed, courts have found that allegations of tracking that go beyond what Malko has alleged here are insufficient to confer Article III standing. For example, in *Popa v. Microsoft Corp.*, 153 F.4th 784, 786-87 (9th Cir. 2025) (cleaned up), the Ninth Circuit Court of Appeals found that the plaintiff lacked Article III standing where she alleged that the defendant had used technology on its website to monitor and "recreate website visitors' entire visit . . . in order to create a video replay of the user's behavior on the website . . . for analysis." The Ninth Circuit found that the plaintiff's allegations of sweeping, full-scale data collection nevertheless failed to identify any "embarrassing, invasive, or otherwise private information collected by [defendant]" and therefore failed to adequately identify any concrete injury. *Id.* at 791.

Malko's Complaint seemingly attempts to sidestep that well established precedent by alleging that the user data that is allegedly gathered by the Tracking Technologies "*can* be correlated and combined with other data sets to compile comprehensive user profiles that reflect consumers' behavior, preferences, and demographics." (Compl. ¶ 60 (emphasis added).) He alleges that "[t]hose in

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

possession of this information *can* gain deep understanding of users' behavioral traits and characteristics." (*Id.* ¶ 61 (emphasis added).) Critically, however, nowhere in the Complaint does Malko allege that GNC actually generated a "comprehensive user profile" about him or otherwise identified him based on his access to its website. Plaintiff's mere speculation about what *could* potentially happen with his data is not sufficient to establish Article III standing. *See Popa*, 153 F.4th at 791 n.5 (holding that "potential harms that *might* be associated with" defendant's alleged conduct are insufficient to confer Article III standing). Accordingly, the Court should dismiss Malko's complaint for lack of Article III standing.

***2. Plaintiff Has Failed to Allege a Concrete Economic Injury.***

Plaintiff has failed to allege the existence of a concrete economic injury. The sole allegation in the Complaint that even conceivably touches on that issue appears as a legal conclusion in his "Unjust Enrichment" count, where Plaintiff alleges that he has "conferred benefit upon [GNC] by providing valuable information" through his use of the Website. That allegation is not sufficient to establish Article III standing. While "California law recognizes a legal interest in unjustly earned profits," as outlined above, Malko has not alleged that GNC invaded any of his legally protected privacy interests, so he has not and cannot plausibly allege that GNC has profited "unjustly" from its purported acquisition and use of his data. *See In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *3; *Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025); *Khamooshi*, 786 F. Supp. 3d at 1183.

Malko's allegations fail to establish a concrete economic injury for the additional reason that he does not allege that he was deprived of the economic value of his data. At most, Malko makes cursory allegations that *GNC* derives commercial value from collecting and sharing the at-issue data with third parties.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

(Compl. ¶ 176.) To establish Article III standing, however, Malko must allege that he, himself "ascribed an economic value to [his] personal information" and was somehow deprived of that economic value. *LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532, at *5-6 (C.D. Cal. Apr. 28, 2011) (*discussing In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001)). Malko has not done so, and the Court should dismiss his Complaint for lack of Article III standing on this basis as well.

**B. Plaintiff's BSDR Allegations Cannot Save His Otherwise Deficient Claims.**

Looking past Malko's lack of standing, the BSDR is the load-bearing wall of Plaintiff's Complaint. He relies on GNC's alleged BSDR violation (i) as the "criminal or tortious" purpose required to defeat the party-consent exception that is otherwise fatal to his claims under the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA"); (ii) as the "unlawful" predicate of his claim under the California Unfair Competition Law ("UCL"); and (iii) as the "highly offensive" predicate for his common-law privacy and intrusion upon seclusion claims. Plaintiff's effort to bootstrap most of his statutory and common law claims to his BSDR allegations fails as a matter of law for the reasons set forth below.

***1. The Court Should Abstain from Applying the BSDR as Malko Requests.***

As a threshold matter, the Bulk Sensitive Data Transfer Rule provides no private cause of action and bears no connection to Malko's alleged "privacy" claims. Rather, the BSDR was promulgated to address what the President declared

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

to be "an unusual and extraordinary threat" to national security arising from the continuing effort of certain countries of concern to access Americans' bulk sensitive personal data and U.S. government-related data. Exec. Order No. 14,117, 89 Fed. Reg. 15,421 , 15,421 (Feb. 28, 2024). The restrictions in the Executive Order are "specific, carefully calibrated actions to minimize the risks associated with access to bulk sensitive personal data and United States Government-related data by countries of concern while minimizing disruption to commercial activity." *Id.*

The Attorney General of the United States (and the Attorney General's designees) holds primary enforcement authority over the rule. *See* 28 C.F.R. §§ 202.202, 202.203, 202.104. Enforcement operates through the Department of Justice, National Security Division. The DOJ may issue pre-penalty notices informing alleged violators of the agency's intent to impose a monetary penalty, 28 C.F.R. § 202.1302(a), and may thereafter impose civil monetary penalties through a penalty notice, *id.* § 202.1303. The issuance of the penalty notice "shall constitute final agency action," and "[t]he violator has the right to seek judicial review of that final agency action in Federal district court." *Id.* § 202.1303. Similarly, a final finding of violation constitutes final agency action that is reviewable "in Federal district court." *Id.* § 202.1305(c)(1).

The Court should not permit Malko to enforce the BSDR against GNC through the guise of his "privacy" claims. To the contrary, the Court should abstain from interpreting or applying the BSDR in this matter. The abstention doctrine permits this Court to abstain from hearing disputes that are better handled by the legislature or are more suited for federal enforcement: "[j]udicial abstention is appropriate when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." *Alvarado v. Selma Convalescent Hosp.*, 64 Cal. Rptr. 3d

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

250, 254 (Cal. Ct. App. 2007) (citation omitted). In *Alvarado*, the plaintiff claimed that the defendant had violated a statute addressing staffing at skilled nursing facilities and sought to use that alleged violation as a predicate "unlawful" act support its UCL claims against defendant. The court abstained from adjudicating plaintiff's claim and dismissed the complaint. Affirming, the Court of Appeal explained that adjudicating the issue would have required the trial court to "assume general regulatory powers over the health care industry through the guise of enforcing the UCL, a task for which the courts are not well-equipped." *Id.* at 258. The court noted that the legislative framework indicated that the legislature intended the Department of Health Services to enforce the statute. *Id.* at 258-59. The court also reasoned that DHS was "better equipped to determine compliance" and upheld the lower court's invocation of the abstention doctrine. *Id.*

Similarly, the primary jurisdiction doctrine permits courts to dismiss or stay claims when the claims at issue are better suited for adjudication by an administrative body. The primary jurisdiction doctrine applies when there is"(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 963 (N.D. Cal. 2014) (citation and internal marks omitted). The primary jurisdiction doctrine is appropriate "if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (citation omitted). In *Swearingen*, for instance, the plaintiff claimed that the defendant had engaged in unlawful conduct – and was thus liable under the UCL – because it had allegedly violated certain FDA regulations by mislabeling its products. *Id.* at 962. The court dismissed the claim under the primary jurisdiction doctrine, noting that adjudicating

the claim "present[ed] a host of technical issues uniquely within the agency's expertise." *Id.* at 964.

Pursuant to both the abstention doctrine and the primary jurisdiction doctrine, the Court should decline Malko's invitation to interpret and enforce the BSDR against GNC. That rule is focused on national security – not Malko's "privacy interests" – and sets forth a highly technical, complex set of requirements that requires expertise and uniformity in administration. The President vested enforcement of the BSDR with the DOJ, whose decisions concerning a party's compliance or non-compliance constitute final agency action, reviewable under the provisions of the Administrative Procedure Act. By invoking the BSDR, Malko is asking this Court to undertake a highly technical inquiry into whether GNC's data collection practices comply with the BSDR's requirements; override the carefully crafted mechanism and process vested in the DOJ to administer and enforce the Rule; and to ignore the applicable judicial review process governing the DOJ's determinations. In so doing, Malko asks this Court to venture into uncharted territory and issue ruling on issues reserved specifically to the DOJ in the first instance. The Court should decline Malko's invitation and decline to evaluate GNC's compliance with the BSDR in evaluating Malko's wholly unrelated claims.

***2. Plaintiff Fails to State a BSDR Violation.***

**a. Plaintiff Fails to Allege Any *Facts* Supporting the Inference that GNC has Transferred any Data to Harbin.**

Even if the Court were to interpret and enforce the BSDR, the Complaint fails to plead any *facts* establishing the elements of a BSDR violation. The BSDR prohibits or restricts "covered data transactions," which are defined as transactions that involve "any access by a country of concern or covered person to any government-related data or bulk U.S. sensitive personal data" through data

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

brokerage, vendor agreements, employment agreements, or investment agreements. 28 C.F.R. § 202.210.

The *sine qua non* of a BSDR violation is the transfer of, or access to, covered data by a covered person. But the Complaint contains no factual allegation permitting the conclusion that GNC actually transmitted any data to Harbin or that Harbin actually accessed any data collected from U.S. website users. The Complaint's bald data-transfer allegations are as follows:

- "GNC—through its automated advertising infrastructure and associated databases—transmits Plaintiff's and potentially millions of other American consumers' data to China." (Compl. ¶ 9.)
- "Without appropriate safeguards or excluding covered foreign parents, GNC knowingly permits access to, or transfer of, such bulk U.S. sensitive personal data to entities or persons that qualify as covered persons under the BSDR." (*Id.* ¶ 56.)
- "Defendant then transmits or provides access to these protected identifiers together . . . to Harbin." (*Id.* ¶ 132.)
- "Defendant provides this data to Harbin and affiliated 'covered persons.'" (*Id.* ¶ 135).
- "[P]ersistent profiles and databases ... were then transferred to, or accessible by, its parent company, Harbin, in direct violation of the BSDR." (*Id.* ¶ 93.)

Malko pleads each of these bald and conclusory allegations "upon information and good faith belief." (*See* Compl. at p. 1 (introductory sentence).) But the Complaint contains no allegations whatsoever about any *facts* that would support those "upon information and belief" conclusions – i.e., what specific data was allegedly transferred, whether any of Plaintiff's alleged data was included in

the transfer, when any purported data transfer occurred, what mechanism or method was used to transfer the data, and who sent and received this data.

Undoubtedly aware of that fundamental deficiency, Plaintiff proclaims in the Complaint that GNC "admits" that it transferred personal data to Harbin. That is untrue, as Plaintiff's own allegations demonstrate. More specifically, Plaintiff cites a section of GNC's Privacy Policy *that is applicable to European Union residents* that GNC does "not disclose any [Personal Data]… to any companies except… to GNC's parent, subsidiaries, or related entities[.]" (Compl. ¶ 72; Answer ¶ 72.) Inexplicably, Plaintiff fails to mention that the cited provision of GNC's Privacy Policy is expressly limited in its application to "***residents and individuals located in the European Union***." (See Exhibit A, GNC Privacy Policy, at pp. 5, 8) (emphasis added).[2] No such statement appears within the GNC Policy applicable to U.S. residents. Accordingly, Plaintiff's misleading reliance on a statement contained in GNC's Privacy Policy applicable solely to E.U. residents could not possibly serve as the factual basis for an alleged BSDR allegation because the BSDR, by its terms, applies only to residents of the United States, and Malko is a U.S. resident.

Stripping away all of Plaintiff's bluster, "scare tactic" rhetoric and mischaracterization of cited documents, it is clear that the only *facts* that Plaintiff

---

[2] In deciding a Rule 12(c) motion, the Court "may consider documents that are "attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]"*Hooker v. Simon*, No. 1:06-CV-00389, 2010 WL 3516662, at *1 (E.D. Cal. Sept. 7, 2010) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (cleaned up). Here, the Court may consider GNC's Privacy Policy because Plaintiff has incorporated it by reference in his Complaint. *See Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037 (N.D. Cal. 2023) ("A document is incorporated by reference when the complaint refers extensively to the document or the document forms the basis of the plaintiff's claim.") (internal marks omitted).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

has alleged in support of his allegations are that GNC, like many other companies based in the United States, is owned in part by a Chinese company, and that it uses certain analytics technology on its Website. These allegations are not sufficient to establish that a wrongful "transfer" of data by GNC to Harbin has occurred. They also fail to establish a violation of the BSDR – or any other law, rule or regulation. Accordingly, Plaintiff's BSDR allegations fail under the standard set forth by the Supreme Court in *Twombly* and *Iqbal*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (*citing Twombly*).

**b. Plaintiff's Complaint Precludes a BSDR Violation.**

In addition to his failure to allege any facts giving rise to the inference that GNC actually transferred any data to Harbin, Malko's conclusory allegations foreclose the conclusion that GNC has violated the BSDR. More specifically, Malko alleges that "GNC has violated the BSDR's prohibition of data-brokerage transactions under 28 C.F.R. § 202.301 and/or of engaging in restricted transactions without the requisite security controls under 28 C.F.R. § 202.401." (Compl. ¶ 137.)

***i. Data-Brokerage Transaction***

As to Malko's "data-brokerage transactions" theory under 28 C.F.R. § 202.301, the Complaint alleges that the BSDR prohibits a "U.S. person" from "knowingly engag[ing] in a covered data transaction involving data brokerage with a country of concern or covered person." (Compl. ¶ 42 (*citing* 28 C.F.R. § 202.301).) The Complaint alleges further that "data brokerage" is defined by the statute as "the sale of data, licensing of access to data, or similar commercial transactions, *excluding . . . investment agreement[s]*." (*Id.* ¶ 43 (emphasis added) (*citing* 28 C.F.R. § 202.214).) Investment agreement is defined as "an agreement or arrangement in which any person, in exchange for payment or other consideration,

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

obtains direct or indirect ownership interests in or rights in relation to . . . [a] U.S. legal entity." 28 C.F.R. § 202.228.

Malko alleges that GNC's purported "provision of [] bulk U.S. sensitive data to Harbin and affiliated covered persons[] constitutes a covered data transaction involving data brokerage" under the BSDR. (*Id.* ¶ 135.) Malko does not allege, however, that GNC sold or licensed data to Harbin or engaged in "any similar commercial transaction" for the transfer of data. To the contrary, Malko's entire theory of transfer rests on the allegation that *GNC is a subsidiary of Harbin*. In other words, even if Malko's Complaint had alleged facts permitting the conclusion that GNC transferred data to Harbin (and it does not), Malko pleads itself out of court because his Complaint establishes that GNC is subject to an "investment agreement" with Harbin.

***ii. Requisite Security Controls***

As to Malko's "requisite security controls" theory under 28 C.F.R. § 202.401," the Complaint alleges that the BSDR provides that "no U.S. person . . . may knowingly engage in a covered data transaction involving a vendor agreement, employment agreement, or investment agreement with a country of concern or covered person unless the U.S. person complies with the security requirements (as defined by § 202.248) required by this subpart D and all other applicable requirements under this part." (Compl. ¶ 44 (*quoting* 28 C.F.R. § 202.401).) In turn, Section 202.248 defines "security requirements" as the Cybersecurity and Infrastructure Agency ("CISA") Security Requirements for Restricted Transactions E.O. 14117 Implementation, January 2025." 28 C.F.R. § 202.248. E.O. 14117 sets forth certain organizational – and covered system – level requirements and data-level requirements. (*Id.* ¶ 47.)

The Complaint alleges no facts permitting the conclusion that GNC has

failed to comply with the security requirements set forth in E.O. 14117. Indeed, the Complaint does not even specify what those specific requirements are, let alone explain if or how GNC fails to comply with them. The Complaint is likewise devoid of any allegations permitting the inference that GNC has "knowingly" failed to comply with those requirements. Because Malko fails to allege any *facts* to support his "requisite security controls" theory under 28 C.F.R. § 202.401, he has failed to allege a BSDR violation. Accordingly, Malko's BSDR allegations fail as a matter of law, as do Malko's claims that are premised on GNC's violation of the BSDR.

***3. Malko Cannot Rely on an Alleged BSDR Violation to Circumvent the Party Exception under ECPA and CIPA.***

Under ECPA and CIPA, it is not unlawful for a person to intercept an electronic communication where that person is a party to the communication. *See* 18 U.S.C. § 2511(2)(d); *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, No. 24-3834, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) ("[A] party to a conversation cannot be liable under [CIPA] section 631 for 'eavesdropping' on its own conversation."). "This exception does not apply, however, where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022). Malko seeks to rely on GNC's alleged violation of the BSDR to circumvent the "party exception" to both ECPA and CIPA. The BSDR cannot serve as the basis for that exception.

**c. No "Crime"**

The BSDR is not a criminal statute. It is a regulatory framework enforced by the DOJ pursuant to the civil and criminal penalty enforcement provisions of IEEPA. Under the IEEPA framework, criminal liability for a violation of the BSDR could only attach for a "willful" violation of the Rule. 50 U.S.C. § 1705(c).

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

As outlined above, Plaintiff has failed to allege any facts to suggest that GNC actually transferred any data to Harbin in violation of the BSDR, let alone that it did so with the specific intention of violating that regulation. *See, e.g.*, *U.S. v. Mousavi*, 604 F.3d 1084, 1092 (9th Cir. 2010) ("In the context of criminal statutes, the word 'willful' generally indicates a requirement of specific intent.") (citation omitted). Because the Complaint contains no facts to support the conclusion that GNC engaged in "criminal" action, Malko has failed to allege the existence of a "crime" sufficient to overcome the party exception applicable to his ECPA and CIPA claims. *See Zocco v. Nelnet, Inc.*, No. 25-cv-04470-NW, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (crime-tort exception inapplicable where plaintiff "fail[ed] to state how [Defendant] allegedly violated [at-issue] laws.").

**d. No "Tortious" Action**

A violation of the BSDR is not a tort. The BSDR is a regulation that is aimed at safeguarding the national security interests of the United States. In implementing the Rule, the DOJ clarified that its purpose was separate from any private duty that may exist to an individual to safeguard his or her privacy interests. *See* Preventing Access to U.S. Sensitive Personal Data and Government-Related Data by Countries of Concern or Covered Persons, 90 Fed. Reg. 1643 (Jan. 8, 2025) (to be codified at 28 C.F.R. Part 202) (distinguishing between state privacy law and national security regulation). Any effort by Malko to define a purported BSDR violation as a "tort" must fail because the BSDR, by its terms, does not provide any legal remedy for individuals who are allegedly "harmed" by a party's violation of the same. *See S. Cal. Pizza Co. v. Certain Underwriters at Lloyd's, London Subscribing to Policy No. 11EPL-20208*, 252 Cal. Rptr. 3d 635, 644 (Cal. Ct. App. 2019) (citation omitted) (defining a tort as "any wrong, not consisting in mere breach of contract, for which the law undertakes to give to the injured party some appropriate remedy against the wrongdoer.").

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

**e. No "Purpose"**

Malko's reliance on the BSDR fails for the additional reason that the Complaint contains no factual allegations to support a conclusion that GNC's "purpose" was to violate the BSDR. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025) (for the crime-tort exception to apply, "it must be that the primary motivation or determining factor in the defendant's actions has been to injure plaintiffs tortiously." (cleaned up)).

The Complaint contains nothing more than barebones allegations that GNC "intercepted" Malko's communications with the Website "for the purpose of disclosing that data in furtherance of . . . the unlawful transfer of consumers' bulk sensitive personal data . . . in violation of the BSDR." (Compl. ¶ 17.) Malko does not allege that GNC did or planned to recognize any pecuniary or commercial benefit from its disclosure of data to Harbin, nor does he allege any other facts that would permit the reasonable conclusion that GNC's primary motivation in allegedly intercepting Malko's "communication" was to transfer its contents to Harbin in violation of the BSDR. *Contra, e.g.*, *Dellasala et al. v. Samba TV, Inc.*, 3:25-cv-03470-JSC, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026) (applying crime-tort exception where plaintiff alleged that defendant "tortiously invaded their privacy to sell their personal data for a profit"); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (applying exception where plaintiff alleged that defendant "intended to disclose its customers' personally identifiable communications… to third parties so that it could deliver targeted ads to its customers"). Accordingly, the Court should reject Malko's improper attempt to use the BSDR to avoid the application of the party exception that is fatal to his ECPA and CIPA claims.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**f. Plaintiff's Wiretapping Claims Fail.**

***i. The Party Exception Bars Malko's CIPA and ECPA Claims.***

Malko alleges that GNC "intercepted" his communications with GNC's website. (Compl. ¶¶ 12, 91.) As discussed above, ECPA and CIPA do not prohibit the alleged interception of an electronic communication by one who is a party to the communication. *See* 18 U.S.C. § 2511(2)(d); *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, No. 24-3834, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) ("[A] party to a conversation cannot be liable under [CIPA] section 631 for 'eavesdropping' on its own conversation."); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023). As such, the Complaint fails to state a claim under either ECPA or CIPA.

***ii. Malko's Claims Under Section 632 Fail as a Matter of Law.***

To plead a viable claim under Section 632, the plaintiff must allege facts establishing that a defendant intentionally used an electronic amplifying or recording device to eavesdrop upon or record a confidential communication. Cal. Penal Code § 632(a). Under Section 632, a confidential communication is defined as

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in . . . any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

*Mezger v. Bick*, 280 Cal. Rptr. 3d 720, 730 (Cal. Ct. App. 2021) (cleaned up).

Malko alleges that he "communicated" with GNC by navigating its website and searching for pre-workout supplements. (Compl.

¶¶ 88-89.) These allegations are not sufficient to support a Section 632 claim for eavesdropping on a confidential communication. California courts have "developed a presumption that Internet communications do not reasonably give rise to" a reasonable expectation of privacy. *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (*citing Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)). Where, as here, the plaintiff has alleged only that he engaged in internet communications whereby he "inquir[ed] about items… on a retail website," there is no reason to deviate from this general rule, and Plaintiff's *Id.* Accordingly, Malko has failed to state a claim under Section 632.

**g. Plaintiff's Remaining Claims Fail.**

***i. Invasion of Privacy/Intrusion Upon Seclusion***

California courts consider claims for invasion of privacy and intrusion upon seclusion together and assess whether (1) there exists a reasonable expectation of privacy, and (2) the intrusion occurred in a manner that was highly offensive. *Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *5 (C.D. Cal. Jan. 16, 2024). "The California Constitution and the common law set a high bar for an invasion of privacy" and intrusion upon seclusion claims. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024); *Esparza*, 2024 WL 655986, at *5. Malko fails to clear that bar as to either claim.

First, as discussed above, Plaintiff has alleged no facts sufficient to support a conclusion that the Court should deviate from the general rule that there is no reasonable expectation of privacy in internet communications. *Revitch*, 2019 WL 5485330, at *3. Malko has alleged that GNC collected his "personal information" in the form of "cookie IDs, device IDs, mobile advertising IDs, and IP addresses" "device metadata" and "full URLs," which "reveals the exact content being viewed by the individual." (Compl. ¶ 197.) Plaintiff alleges that he viewed and purchased a pre-workout supplement on GNC's website. (*Id.* ¶ 89.) This type of data

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

collection "is different in kind and degree to the data collection courts have found to support a reasonable expectation of privacy." *In re Apple Data Privacy Litig.*, No. 5:22-cv-07069-EJD, 2026 WL 146025, at *10 (N.D. Cal. Jan. 20, 2026). Malko has not alleged that GNC collected his sensitive personal health or financial information or gathered information related to his romantic interests, political or religious views, travel plans, or plans for the future. *See id.* (citing cases); *see also, e.g., Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933, 945 (N.D. Cal. 2024). His allegations depict nothing more than an inquiry about a non-sensitive consumer product on a retail website. Such activity does not give rise to a reasonable expectation of privacy. *Revitch*, 2019 WL 5485330, at *3.

Second, Malko has not alleged a "highly offensive" intrusion. For an intrusion to be "highly offensive" so as to support a claim for intrusion upon seclusion, it must constitute an "egregious breach of . . . social norms." *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025). Courts in the Ninth Circuit have held that data collection and disclosure to third parties that is "routine commercial behavior" is not a "highly offensive" intrusion of privacy. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of unique device identifier number, personal data and geolocation information not "highly offensive"). In fact, many courts have found that the disclosure of highly personal information that far surpasses the degree of "sensitivity" alleged by Malko was insufficient to state a claim for intrusion upon seclusion. *See, e.g., Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of browser history and social security numbers not "highly offensive"); *Selah v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (disclosure of credit card information not "highly offensive").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Here again, Malko tries resuscitating an otherwise lifeless privacy claim by pointing to the BSDR. (*See* Compl. ¶ 199.) Specifically, Malko alleges that "sharing [information] with a foreign adversary is highly offensive." (*Id.*) As explained above, however, Malko's reliance on the BSDR is misplaced because he has not alleged any facts establishing that GNC actually transferred any data to Harbin (or anyone else) or that GNC violated the BSDR. Because Malko has failed to allege facts necessary to establish his claims for invasion of privacy and intrusion upon seclusion, those claims must be dismissed as well.

***4. CDAFA***

To state a claim under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Malko must allege facts establishing that GNC "knowingly access[ed] and without permission [took]… any data from a computer." *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 1486139, at *4 (N.D. Cal. Apr. 5, 2024) (*citing* Cal. Penal Code § 502(c)(2)). Whether the defendant had "permission" to access that data depends on whether the defendant "circumvent[ed] technical or code-based barriers." *Id.* (cleaned up). Courts have found, for example, that password protection and user-established privacy settings constitute "technical or code-based barriers" for the purposes of the statute. *Id.* (privacy setting selection constitutes technical or code-based barrier); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 965 (N.D. Cal. 2014) (analyzing password protection as a technical or code-based barrier).

Here, Malko fails to allege that GNC circumvented any technical or code-based barriers to collect the data at issue in his Complaint. Malko does not allege that he had any particular privacy setting in place that was intended to prevent GNC from collecting the data that he alleges it collected, nor does he allege that GNC circumvented any password protection or other barrier when it allegedly collected his data from the Website. Accordingly, Plaintiff's claim under CDAFA is

deficient on its face and should be dismissed as a matter of law. *See, e.g.*, *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1054 (N.D. Cal. 2014) (dismissing CDAFA claim for failure to plead circumvention of technical or code-based barrier).

Similarly, Malko fails to allege that he has suffered "damage" or "loss" sufficient to state a CDAFA claim. Courts in the Ninth Circuit have held that a plaintiff fails to adequately allege economic loss to sustain a CDAFA claim where the purported damage or loss is based solely on the alleged misappropriation of personal data, and do not allege any "damage to the computer system, network, program, or data contained on [plaintiff's] computer. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025) (citing cases). Malko has failed to allege any damage to his computer system or any other harm outside of GNC's alleged misappropriation of his personal data, and his CDAFA claim must fail under the reasoning outlined in *Tenet Healthcare.*

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

***5. Unfair Competition Law***

Malko's claim under California's Unfair Competition Law ("UCL") fails for lack of standing. To have standing under the UCL, Malko must demonstrate that he suffered an "economic injury" as a result of the unfair business practice underlying the claim. *See Vinluan-Jularbal v. Redbubble, Inc.*, No. 221CV00573JAMJDP, 2021 WL 4286539, at *3 (E.D. Cal. Sept. 21, 2021). "The UCL's requirement of economic injury renders standing under the UCL substantially narrower than federal standing under Article III." *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 976 (C.D. Cal. 2023) (cleaned up). As discussed above, Malko lacks Article III standing. (*See supra* pp. 7-11.) Accordingly, he does not have standing under the UCL either, and his claim must be dismissed.

Further, even if he had established Article III standing (which he has not), the "economic injury" that Plaintiff alleges to have suffered as a result of GNC's

conduct is insufficient to confer standing for his UCL claim. Courts regularly reject the contention that a plaintiff suffers economic loss from the distribution of his personal data where plaintiff fails to allege specific facts showing that he could have independently sold and profited from the information at issue. *See Griffith*, 967 F. Supp. 3d at 977; *see also Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (citing cases).

Further, because Malko's statutory and common law claims fail as a matter of law for the reasons discussed above, Malko has failed to allege a predicate violation to support his UCL claim. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094-95 (N.D. Cal. 2017). Accordingly, the Court should dismiss Malko's UCL claim.

***6. Unjust Enrichment***

Malko's claim for unjust enrichment must be dismissed because California does not recognize unjust enrichment as a stand-alone cause of action. *Low*, 900 F.Supp.2d at 1031 (citing cases).

## V. CONCLUSION

For all of the foregoing reasons, Defendant GNC Holdings, LLC respectfully requests that the Court dismiss Malko's Complaint in its entirety, with prejudice.

Dated: May 26, 2026

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: */s/ Fridrikh V. Shrayber*
Fridrikh V. Shrayber (*admitted pro hac vice*)

*Attorneys for Defendant GNC Holdings, LLC*

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**CERTIFICATION PURSUANT TO CIVIL LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendant GNC Holdings, LLC, certifies that this brief contains 6,913 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

**DENTONS COHEN & GRIGSBY P.C.**

By: *_/s/ Fridrikh V. Shrayber_*
Fridrikh V. Shrayber (*pro hac vice*)

Attorneys for Defendant
GNC HOLDINGS, LLC