**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd, Suite 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice*)
Stephanie Reed (*pro hac vice*)
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANTHONY MALKO, *individually and on behalf of all others similarly situated*,

Plaintiff,

vs.

GNC HOLDINGS, LLC,

Defendant.

Case No. 2:26-cv-01833-MCS-AJR

Hon. Mark C. Scarsi

**OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Hearing Date: July 27, 2026
Hearing Time: 10:00 A.M.
Hearing Location: Courtroom 7c

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. BACKGROUND .......... 3
Defendant's Tracking Infrastructure. .......... 3
The BSDR .......... 3
III. ARGUMENT .......... 4
A. Plaintiff Has Article III Standing. .......... 4
1. Plaintiff's Health Product Browsing Data Is Sufficiently Sensitive .......... 5
2. Plaintiff's Many Identifiers and Communications are Sufficiently Sensitive .......... 5
3. Contributing to Behavioral Profiles Is a Concrete Injury .......... 6
4. Plaintiff Has Suffered a Concrete Economic Injury. .......... 7
B. Judgment on the Pleadings Is Inappropriate. .......... 8
1. GNC Cannot Obtain Partial Judgment on the Pleadings. .......... 8
2. Abstention and Primary Jurisdiction Are Inapplicable. .......... 8
Abstention .......... 8
Primary Jurisdiction .......... 9
3. Plaintiff Plausibly Alleges a BSDR Violation. .......... 10
4. GNC's EU-Limitation Argument Is Not Properly Before the Court and Is Wrong. .......... 12
Incorporation by Reference is Inappropriate .......... 12
The Privacy Policy's Plain Text .......... 12
5. GNC's Latest Exemption Argument Fails and Concedes a BSDR Violation is Alleged. .......... 13
6. Security Controls Are GNC's Burden and Non-Compliance Is Alleged. .......... 14
C. CIPA is an All-Party Consent Statute .......... 15
D. The Crime-Tort Exception Defeats ECPA's Party Exception. .......... 15
Crime .......... 15
Tort .......... 15
Purpose .......... 15
E. CIPA Section 632—Plaintiff Reasonably Expected Confidentiality. .......... 17
F. Invasion of Privacy and Intrusion Upon Seclusion—GNC's Authorities Support Plaintiff's Position. .......... 18
Reasonable Expectation. .......... 18
Highly Offensive. .......... 18
Likelihood of harm. .......... 18
Degree and setting. .......... 20
Motive and objectives. .......... 20
Countervailing interests. .......... 20
GNC's Authority Has Been Reversed. .......... 20
G. CDAFA—GNC's Authorities Are Outdated and Inapposite. .......... 20
Without Permission. .......... 20
Damage or Loss. .......... 21
H. UCL—GNC Fails to Address Benefit-of-the-Bargain. .......... 21
Article III. .......... 21
Statutory Standing. .......... 21
Predicate Violation. .......... 22
I. Unjust Enrichment–Retained Benefits at Plaintiff's Expense. .......... 22
IV. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alvarado v. Selma Convalescent Hosp.*,
153 Cal.App.4th 1292 (2007) ........ 8, 9

*Anderson v. Nat'l Collegiate Athletic Ass'n*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) ........ 6

*Baker v. Index Exchange Inc.,et al.*,
2026 WL 1734901 (N.D. Ill. June 16, 2026) ........ 2, 9, 10, 16

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ........ 8

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ........ 18

*Brown v. MCI WorldCom Network Servs., Inc.*,
277 F.3d 1166 (9th Cir. 2002) ........ 10

*Calhoun v Google*,
526 F.Supp.3d 605 ........ 13

*Camplisson v. Adidas Am., Inc.*,
809 F.Supp.3d 1095 (S.D. Cal. 2025) ........ 6

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........ 5, 6

*City of L.A. v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ........ 5

*Comm'r v. Clark*,
489 U.S. 726 (1989) ........ 13

*Congdon v. Uber Techs., Inc.*,
291 F.Supp.3d 1012 (N.D.Cal. 2018) ........ 13

*Deivaprakash v. Condé Nast*,
2025 WL 2541952 (N.D.Cal. Sept. 4, 2025) ........ 6

*Deivaprakash v. Condé Nast*, 2025 WL 2779193 (N.D.Cal. Sept. 30, 2025) .......... 6

*Dellasala v. Samba Tv, Inc.*, 2026 WL 1138358 (N.D.Cal. Apr. 21, 2026) .......... 7, 17

*Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302 (N.D. Cal. Jul. 25, 2025) .......... 17

*Doe v. Tenet Healthcare Corp.*, 789 F.Supp.3d 814 (E.D. Cal. 2025) .......... 21, 22

*Donohue v. Apple, Inc.*, 871 F.Supp.2d 913 (N.D. Cal. 2012) .......... 22

*Ellsworth v. U.S. Bank, N.A.*, 30 F.Supp.3d 886 (N.D. Cal. 2014) .......... 9

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .......... 22

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) .......... 14

*Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 5

*Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149 (C.D. Cal. 2026) .......... 16, 17

*Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024 (S.D. Cal. 2023) .......... 7

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) .......... 14

*Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal.App.4th 124 (2015) .......... 9

*Harris v. iHeartMedia, Inc.*, 2026 WL 247875 (N.D.Cal. Jan. 29, 2026) .......... 6

*Hart v. TWC Prod. & Tech. LLC*, 526 F.Supp.3d 592 (N.D. Cal. 2021) .......... 19, 22

*In re Apple Data Privacy Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ........ 18

*In re Amazon Consumer Speech Litig.*,
2025 WL 2995046 (C.D. Cal. Aug. 15, 2025) ........ 8

*In re Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ........ 7, 19, 21

*In re Google Assistant Privacy Litig.*,
546 F.Supp.3d 945 (N.D. Cal. 2021) ........ 7

*In re Google Location Hist. Litig.*,
514 F.Supp.3d 1147 (N.D. Cal. 2021) ........ 20

*In re GNC Holdings, Inc. et al.*,
Case No. 20-11662 (Bankr. D. Del.) ........ 1

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ........ 17, 18

*In re Nurture Baby Food Litig.*,
2025 WL 918927 (S.D.N.Y. Mar. 26, 2025) ........ 10

*In re USA Today Co.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ........ 5

*Ingraham v. Capital One Financial Corp.*,
2026 WL 1755170 (N.D. Cal. May 22, 2026) ........ 20

*Inst. for Fisheries Res. v. Cont'l Tire the Americas, LLC*,
2024 WL 3381032 (N.D. Cal. July 10, 2024) ........ 10

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) ........ 15

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ........ 6, 17, 18

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) ........ 6

*Khamooshi v. Politico LLC*,
786 F.Supp.3d 1174 (N.D. Cal. 2025) ........ 5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........................................................................12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)......................................................5

*Kwikset Corp. v. Superior Ct.*,
51 Cal.4th 310 (2011)........................................................................................21

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)......................................................7

*Living on the Edge, LLC v. Lee*,
2015 WL 12661917 (C.D. Cal. Aug. 25, 2015).....................................................8

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025)..........................................................9

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D.Cal. Sept. 16, 2024)......................................................17

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006)..........................................................................12

*Meacham v. Knolls Atomic Power,Lab.*,
554 U.S. 84 (2008)...........................................................................................14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
402 F.Supp.3d 615 (N.D.Cal. 2019)..................................................................17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)............................................................................6

*Sec. & Exch. Comm'n v. Payward, Inc.*,
763 F. Supp. 3d 901, 907 (N.D. Cal. 2025).......................................................23

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. April 4, 2025).................................................17, 21

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal., Aug. 4, 2025)......................................................21

*Smith v. YETI Coolers*,
745 F.Supp.3d 933 (N.D. Cal. 2024)...........................................................18, 19

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 15, 18

*Ribas v. Clark*,
38 Cal.3d 355 (Cal. 1985) .......... 15

*Robles v. Domino's Pizza, LLC*,
913 F.3d 898 (9th Cir. 2019) .......... 10

*Rodriguez v. Google LLC*,
772 F.Supp.3d 1093 (N.D. Cal. 2025) .......... 21

*Rodriguez v. Google LLC*,
2024 WL 1486139 (N.D. Cal. Apr. 5, 2024) .......... 21

*S. Cal. Pizza Co. v. Certain Underwriters at Lloyd's,*
252 Cal.Rptr.3d 635 (Cal. Ct. App. 2019) .......... 16

*Shah v. Capital One Financial Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. 2025) .......... 20

*Shah v. MyFitnessPal, Inc*.,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 5, 20

*Shuts v. Covenant Holdco LLC*,
208 Cal.App.4th 609 (2012) .......... 9

*Smith v. State Farm Mut. Auto. Ins. Co.*,
93 Cal.App.4th 700 (2001) .......... 22

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) .......... 15

*Toy v. Life Line Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... *passim*

*Tsering v. Meta Platforms, Inc*.,
2026 WL 89320 (N.D.Cal. Jan. 12, 2026) .......... 20, 21

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 20

*Wehlage v. EmpRes Healthcare, Inc.*,
791 F.Supp.2d 774 (N.D. Cal. 2011) .......... 9

*Xu v. Reuters News, Inc.*,
2025 WL 3035016 (Cal.Sup. Oct. 24, 2025) ........................................................ 6

*Yockey v. Salesforce, Inc.*,
688 F.Supp.3d 962 (N.D. Cal. 2023) ............................................................... 17

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ................................................ 15, 16

**Statutes**

18 U.S.C. § 2511 ............................................................................................ 15
50 U.S.C. § 4565 .............................................................................................. 1
Cal. Lab. Code § 2802 ..................................................................................... 16
Cal. Lab. Code § 98 ........................................................................................ 16

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................... 17

**Regulations**

28 C.F.R. § 202.201 ................................................................................... 11, 14
28 C.F.R. § 202.210 ........................................................................................ 11
28 C.F.R. § 202.214 ........................................................................ 10, 12, 13, 14
28 C.F.R. § 202.217 ................................................................................... 12, 13
28 C.F.R. § 202.228 ............................................................................... 10, 12, 13
28 C.F.R. § 202.248 ........................................................................................ 14
28 C.F.R. § 202.258 ................................................................................... 12, 13
28 C.F.R. § 202.301 ................................................................................... 12, 14
28 C.F.R. § 202.401 ............................................................................... 12, 13, 14
28 C.F.R. § 202.508 ........................................................................................ 11
28 C.F.R. § 202.1102 ...................................................................................... 16
28 C.F.R. § 202.1301 ...................................................................................... 16
28 C.F.R. § 202.1303 ................................................................................. 10, 16
31 C.F.R. § 800.305 .......................................................................................... 1
28 C.F.R. § Part 202 ...................................................................................... 1, 3
89 Fed. Reg. 15421 (Feb. 28, 2024) ..................................................................... 4
90 Fed. Reg. 1636 (Jan. 8, 2025) ........................................................................ 4

# I. INTRODUCTION

This case concerns GNC Holdings, LLC ("Defendant" or "GNC") systematically allowing a foreign adversary access to Americans' sensitive identifiers and behavioral data. When consumers visit GNC's website, its network of surveillance technologies silently intercept their browsing activity—capturing persistent identifiers, full-string URLs, IP addresses, advertising IDs, and cookie data—and GNC provides access to that information to its parent entities including Harbin Pharmaceutical Group ("Harbin"). ¶¶12-14, 53-56.[1]

Harbin is headquartered in the People's Republic of China ("PRC") and is subject to PRC intelligence laws requiring companies to cooperate with intelligence agencies and to grant authorities unrestricted access to user data. ¶¶27-30. In the hands of intelligence agencies, user data is used to build detailed behavioral profiles used for surveillance and blackmail. ¶¶15-16, 63-65. Congress has identified Harbin as a recognized national security threat, with U.S. Senators requesting a national security review of Harbin's majority acquisition[2] of GNC and warning that "[e]fforts to obtain personal and sensitive data related to health information…of U.S. persons must be reviewed with an understanding of the…intelligence aims of the" PRC. ¶70.

Anthony Malko ("Plaintiff") alleges that by providing Harbin access to the bulk sensitive personal data of millions of Americans, GNC violated the Bulk Sensitive Data Rule ("BSDR" or "Rule"), 28 C.F.R. Part 202, a national security regulation prohibiting U.S. companies, like GNC, from utilizing tracking

[1] Citations to "¶¶#" are to the Complaint (ECF 1); to "Ans." To GNC's Amended Answer (ECF 30); to "Mot." to GNC's Motion for Judgment on the Pleadings (ECF 31).

[2] A national security review of Harbin's acquisition of a minority interest in GNC's predecessor was conducted by CFIUS. Ans ¶¶247-50. But that review covered only Harbin's non-controlling stake in GNC's predecessor—a distinct category of "covered transaction" under 50 U.S.C. § 4565(a)(4)(B)(ii). Ans. ¶¶247-250. Harbin subsequently acquired control of GNC Holdings, Inc.'s assets through its acquisition of Defendant through bankruptcy and this second transaction is subject to independent scrutiny. *See* 31 C.F.R. § 800.305; 50 U.S.C. § 4565(a)(4)(B)(i), *In re GNC Holdings, Inc. et al.*, Case No. 20-11662 (Bankr. D. Del.), ECF 1202; *see also* ECF 26.

technologies to provide access to Americans' bulk sensitive personal data to entities tied to countries of concern, including the PRC. ¶¶1-3, 31-49, 67-85. It also violated the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), California's Unfair Competition Law ("UCL"), and constitutes invasion of privacy, intrusion upon seclusion, a violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and unjust enrichment. ¶¶107-244.

Seeking to avoid judicial scrutiny, GNC attempts to reframe this case as a dispute over "innocuous business practices" and dismisses Plaintiff's BSDR allegations as "bald," "inflammatory," and "scare tactic rhetoric." Mot. at 9. But GNC's Privacy Policy acknowledges that it shares the identifiers the BSDR addresses with "GNC's parent, subsidiaries, or related entities," which includes Harbin and other covered persons. ¶72. Additionally, Congress has documented that Harbin is a conduit for state-directed data collection, demanded national security review of Harbin's majority acquisition of GNC, and introduced legislation addressing the data-risks posed by GNC's PRC ownership. ¶¶70-71.

GNC's attempt to rewrite the Complaint cannot save it. GNC concedes it sells health-related products—data consistently recognized as more sensitive than that at issue in its Article III cases—Plaintiff alleges far more than the IP-address-only cases GNC cites.

Its abstention arguments also fail—a court has already recognized the BSDR satisfied ECPA's crime-tort exception. *Baker v. Index Exchange Inc., et al.*, 2026 WL 1734901, at *6 (N.D. Ill. June 16, 2026) ("the Court concludes that an action for damages under the BSD[R] regulations is a tort action" satisfying the ECPA's crime-tort exception).

Its data-brokerage exclusion argument misreads the BSDR. Its crime-tort challenges ignore half the Complaint and are misguided. Its claim-specific arguments are all contrary to authority. The motion should be denied in full.

## II. BACKGROUND

"GNC is a retailer of health and nutritional products". Mot. at 10. GNC operates www.gnc.com (the "Website"). ¶12. GNC is a wholly owned subsidiary of Harbin, whose operations are subject to PRC government control, oversight, and compelled disclosure laws requiring PRC-companies and individuals to secretly cooperate with government surveillance efforts and to grant authorities unrestricted access to private user data. ¶¶24-30.

**Defendant's Tracking Infrastructure.** When a user arrives on the Website, it immediately loads first- and third-party tracking technologies ("Tracking Technologies") before the user can detect or consent to them. ¶¶50-51, 114, 116. GNC intentionally integrated these technologies—provided by TikTok, Facebook, Microsoft, Google, the Trade Desk, RTB House, LiveRamp, and numerous others (collectively, "Third Parties")—to track user behavior and transmit data to first- and third-party platforms. ¶52. Through this infrastructure, GNC assists the Third Parties in collecting comprehensive user data, including persistent identifiers—IP addresses, advertising IDs, cookie IDs, and device IDs—full-string URLs—revealing the pages visited, products viewed, and search terms entered—metadata and contextual information—including referring pages and behavioral activity reflecting users' interests, habits, and purchasing behavior. ¶¶12, 53-59, 92.

The Tracking Technologies reroute users' communications and identifiers to third-party servers during page load, simultaneously with their transmission to each page of the Website, without users' awareness or consent. ¶¶112-118. The Third-Parties and GNC then use those intercepted communications and identifiers for their own purposes—including profiling making them accessible to Harbin and affiliates—as GNC's own Privacy Policy confirms. ¶¶9, 13, 72, 93-96, 135-39.

**The BSDR**, effective April 8, 2025, and codified at 28 C.F.R. Part 202 was initiated by President Biden and finalized by President Trump. *See* 89 Fed. Reg. 15,421 (Feb. 28, 2024). The BSDR responded to what the U.S. government deemed

an "unusual and extraordinary threat to the national security and foreign policy of the United States"—foreign adversaries systematically acquiring Americans' online identifiers and behavioral data. ¶¶1-3.

The BSDR prohibits U.S. persons from making bulk sensitive personal data accessible to "covered persons" subject to the jurisdiction of countries of concern, including the PRC. ¶¶31-49. It was enacted because such data in the hands of foreign adversaries is used to assemble behavioral profiles and target Americans for coercion, blackmail, and espionage. ¶¶15-16; *see also* 89 Fed. Reg. 15421, 15422 (Feb. 28, 2024); 90 Fed. Reg. 1636, 1637-38, 1646 (Jan. 8, 2025). The bulk identifiers GNC collects and makes accessible to Harbin—including IP addresses, advertising IDs, and cookie data—constitute covered personal identifiers under the BSDR. ¶¶38-40, 131-133.

GNC's conduct confirms its awareness of and disregard for the BSDR's requirements. GNC is a member of groups which actively participated in the DOJ rulemaking process that produced the BSDR and specifically commented on the inclusion of advertising identifiers, IP addresses, and cookies as covered personal identifiers; the DOJ declined to adopt the proposed exclusion. ¶¶77-80. When all of GNC's predecessor's assets were sold through bankruptcy to a subsidiary of Harbin, U.S. Senators formally requested a Committee on Foreign Investment in the United States ("CFIUS") review, warning about it data collection efforts "and intelligence aims of the" PRC, and a congressperson subsequently introduced legislation to impose restrictions on GNC due to the risk of "exposing personal information, spending habits, geolocation and behavioral patterns that could be exploited by the" PRC. ¶¶70-71. Nonetheless, GNC continues to violate the BSDR. ¶¶74-75, 81-85.

## III. ARGUMENT

### *A. Plaintiff Has Article III Standing.*

GNC argues that Plaintiff has failed to show either an intangible or economic injury. *See* Mot. 5-11. Plaintiff need not prevail on both forms—instead, "a plaintiff

need only show a slight injury for standing." *City of L.A. v. Barr*, 929 F.3d 1163, 1173–74 (9th Cir. 2019). Nonetheless, Plaintiff satisfies both.

***1. Plaintiff's Health Product Browsing Data Is Sufficiently Sensitive.***

GNC argues that the data at issue is insufficiently sensitive to confer standing but ignores nature of the URLs and product pages at issue. Plaintiff visited GNC's Website specifically to browse for and purchase health-related products. ¶¶87-89. The full-string URLs he transmitted revealed interest in health-related products to third parties. ¶¶12, 88, 92. Courts consistently recognize health, wellness, and nutrition information as sufficiently sensitive to implicate cognizable privacy interests. *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) (health-related data is "more sensitive" and confers standing); *Shah v. MyFitnessPal, Inc*., 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (information "related to personal topics like nutrition and fitness" confers standing); *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *1, 3 (N.D. Cal. Mar. 19, 2024) (disclosure of health-related product page information akin to intrusion upon seclusion and sufficient for standing).

***2. Plaintiff's Many Identifiers and Communications are Sufficiently Sensitive.***

Even if there were no health information at issue, GNC relies on cases that address only IP addresses. Mot. at 12-13, 14 (citing *Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174, 1179 (N.D. Cal. 2025); *In re USA Today Co.,* 2026 WL 932655, at *2-3 (N.D. Cal. Apr. 6, 2026); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3-4 (N.D. Cal. June 24, 2025); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)). Although GNC misleadingly suggests that more categories of information were at issue, each found that no other category of data was allegedly collected and dismissed on that basis. As even GNC's cited authority recognizes, they are distinguishable from cases involving the "disclosure of several types of personal information all linked together, not just IP addresses".

*Compare Carolus*, 2025 WL 1338193, at *1 *with* ¶¶12-13, 53-56, 63-67, 92, 132-138, 212-220 (alleging the disclosure of several types of personal information—including URLs revealing the pages and products viewed, cookie IDs, device IDs, advertising IDs, IP addresses, and browser metadata—all linked together). GNC also misreads *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). In *Popa* the third party collected purely anonymous engagement metrics with no persistent identifiers, no profile construction, and no transmission to a third-party for independent use. *Id*. at 786, 791. Here, the information at issue is identifying, much more expansive, and of the type courts regularly find sufficient for standing. *Katz-Lacabe v. Oracle Am., Inc*., 668 F.Supp.3d 928, 940 (N.D. Cal. 2023) (standing based on the "ability to amass vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers") (cleaned up); *Camplisson v. Adidas Am., Inc.*, 809 F.Supp.3d 1095, 1106 (S.D. Cal. 2025) (distinguishing *Popa* where third-parties collected identifiers and communications without consent); *Anderson v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 925519, at *6 (C.D. Cal. Mar. 25, 2026) (same, collecting cases); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (same, collecting cases).

***3. Contributing to Behavioral Profiles Is a Concrete Injury.***

Plaintiff's allegations also suffice "because the privacy violation extends beyond the collection of just [Plaintiff's] IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." *Deivaprakash v. Condé Nast*, 2025 WL 2541952, at *4, n.4 (N.D.Cal. Sept. 4, 2025); *see also Deivaprakash v. Condé Nast*, 2025 WL 2779193, at *2 (N.D.Cal. Sept. 30, 2025) (same); *Xu v. Reuters News, Inc*., 2025 WL 3035016, at *3 (Cal.Sup. Oct. 24, 2025) (no "expectation of privacy to the collected information does not preclude [Plaintiff] from alleging an" injury because "Plaintiff alleges that the collected information was used to build a profile"); *Harris v. iHeartMedia, Inc*., 2026 WL

247875, at *2 (N.D.Cal. Jan. 29, 2026) (similar); *Dellasala v. Samba Tv, Inc.*, 2026 WL 1138358, at *3 (N.D.Cal. Apr. 21, 2026) (similar); ¶¶13-16, 53-56, 60-68, 92-94, 113-118.

GNC selectively quotes two paragraphs using the word "can," to incorrectly claim Plaintiff never alleges GNC "actually generated a 'comprehensive user profile' about him or otherwise identified him". Mot. at 9-10. That's wrong. GNC "used these intercepted communications" to "enrich[] persistent profiles and databases which were then transferred to, or accessible by," covered persons, ¶93; "builds highly detailed identity profiles unique to each individual," ¶¶212-215; and its cookies "allow[] GNC to build a detailed, persistent profile on each individual." ¶219; *see also* ¶197. GNC is also wrong that Plaintiff never alleges it "identified him"—the identifiers were "uniquely associated with Plaintiff," ¶92, enabling linkage of his "browsing activity to their identity." ¶14.

***4. Plaintiff Has Suffered a Concrete Economic Injury.***

Plaintiff also sufficiently alleges Defendant derived an unlawful economic benefit at Plaintiff's expense. *Compare Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1038 (S.D. Cal. 2023), *with* ¶¶60-62, 112-113, 172-177. Contrary to Defendant's argument, "there is no constitutional requirement that Plaintiff demonstrate lost economic value" of data. *Greenley*, 684 F.Supp.3d at 1038. GNC's reliance on *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011), for the notion that Plaintiff must have "ascribed an economic value" to his data fails—plaintiffs have "a stake in the profits garnered" from their data, and that stake "exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *In re Facebook, Inc.*, 956 F.3d 589, 600-01 (9th Cir. 2020) ("*Facebook*"); *see also* ¶¶172-177, 231.

GNC fails to address that Plaintiff also alleges overpayment and benefit-of-the-bargain injuries—had he known, he would not have purchased or would have paid less. *Compare In re Google Assistant Privacy Litig.*, 546 F.Supp.3d 945, 971

(N.D. Cal. 2021), *with* ¶¶178, 242-243; *see also Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144-46 (9th Cir. 2024); *Toy*, 2024 WL 1701263, at *2 (omission supports benefit-of-the-bargain injury).

### *B. Judgment on the Pleadings Is Inappropriate.*

#### *1. GNC Cannot Obtain Partial Judgment on the Pleadings.*

GNC's motion is built almost entirely on its BSDR arguments. Mot. at 15-26. All fail at the threshold because "Defendants cannot move for judgment on the pleadings with respect to less than a full cause of action." *Living on the Edge, LLC v. Lee*, 2015 WL 12661917, at *4 (C.D. Cal. Aug. 25, 2015), and every claim GNC attacks rests on independent, non-BSDR-related grounds its motion never addresses. Plaintiff's ECPA claim is also premised on the crime-tort exception being satisfied by invasion of privacy and intrusion upon seclusion through identity-profile creation and dissemination. ¶138(a)-(b). Plaintiff's invasion of privacy and intrusion upon seclusion claims are independently premised on GNC's covert surveillance of users at scale without consent, ¶¶192-95, 207-11, and its correlation of intercepted data into persistent behavioral profiles, ¶¶199, 210, 217-220—each independently stating claims apart from the BSDR. Plaintiff's UCL claim rests on both an unfairness theory—which GNC does not address—and an unlawful theory predicated on ECPA, CIPA, CDAFA, invasion of privacy, and intrusion upon seclusion, none of which requires a BSDR violation. ¶¶238-241. Because the motion tests the sufficiency of a claim, not discrete parts of it, GNC has not established a basis for judgment on any claim, and the Court need not reach the BSDR arguments. *In re Amazon Consumer Speech Litig.*, 2025 WL 2995046, at *4 (C.D. Cal. Aug. 15, 2025) (collecting cases). If it does, each is misguided.

#### *2. Abstention and Primary Jurisdiction Are Inapplicable.*

**Abstention**. GNC relies on one case—*Alvarado*—to argue for the extraordinary relief of abstention. *Alvarado* involved a UCL claim seeking only equitable relief, including an injunction requiring the trial court to assume ongoing,

class-wide regulatory supervision of staffing levels across facilities statewide under multi-variable statutory formulas. *Alvarado v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292, 1305-06 (2007). None of those concerns are present here. *Alvarado* does not mandate abstention and is inapposite where, as here, the DOJ already has made the relevant policy determinations and the applicable standard is "sufficiently specific for a court to competently determine whether such statutory guidance is being followed." *Shuts v. Covenant Holdco LLC*, 208 Cal.App.4th 609, 621-25 (2012) (distinguishing *Alvarado* finding abstention inappropriate where provision without private right of action enforced by provision with private right of action); *see also Wehlage v. EmpRes Healthcare, Inc.*, 791 F.Supp.2d 774, 785-86 (N.D. Cal. 2011) (same); *Ellsworth v. U.S. Bank, N.A.*, 30 F.Supp.3d 886, 916 n.11 (N.D. Cal. 2014) (same). DOJ has already made the relevant policy determinations. It's no surprise then, that another Court has already found that the BSDR satisfied the crime-tort exception. *Baker* 2026 WL 1734901, at *6.

Further, Plaintiff's ECPA claims cannot be dismissed under this equitable doctrine because it does not reach claims for legal damages. *Wehlage*, 791 F.Supp.2d at 786. Plaintiff invokes the BSDR only as a predicate—such a plaintiff "does not bring a cause of action under" it. *Id.* at 787. "[A]bstention is not appropriate where[, as here,] resolution of the issues involves solely the judicial function of resolving questions of law based on facts before the court." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal.App.4th 124, 152 (2015). Courts routinely apply federal regulations—including the BSDR itself and HIPAA—as predicates in ECPA litigation. *E.g., Baker* 2026 WL 1734901, at *6 (BSDR satisfied crime-tort exception); *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *6 (E.D. Va. Mar. 25, 2025) (collecting cases; permitting HIPAA and state health-privacy violations to satisfy the exception).

**Primary Jurisdiction**. This discretionary, prudential doctrine "requires resolution of an issue of first impression, or of a particularly complicated issue that

Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166, 1172 (9th Cir. 2002). GNC does not even attempt to identify either. This is not an issue of first impression—a court has already found that the BSDR satisfies the ECPA's crime-tort exception. *Baker,* 2026 WL 1734901, at *6. GNC's bare assertion that the BSDR is "highly technical" (Mot. at 18) identifies no particularly complicated issue. And the Rule specifically contemplates judicial review. 28 C.F.R. § 202.1303.

The doctrine does not exist to "secure expert advice." *Brown*, 277 F.3d at 1172. To the contrary, "the application of the [BSDR] to the facts of this case are well within the court's competence….Courts are perfectly capable of interpreting the meaning of" the BSDR. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910-11 (9th Cir. 2019). If there is any ambiguity, the DOJ has provided examples to aid Courts in interpreting the BSDR—examples that specifically address the use of the Tracking Technologies here. ¶7 & n.2 (citing 28 C.F.R. §§ 202.214(b)(7),(8), 202.228(c)(2),(3)).

Finally, even if the requirements of the doctrine were satisfied, and they are not, "the continued viability of the [primary jurisdiction] doctrine may be in question after the Supreme Court decision in *Loper Bright*." *In re Nurture Baby Food Litig.*, 2025 WL 918927, at *9 (S.D.N.Y. Mar. 26, 2025) (citing *Inst. for Fisheries Res. v. Cont'l Tire the Americas, LLC*, 2024 WL 3381032, at *3 (N.D. Cal. July 10, 2024)).

***3. Plaintiff Plausibly Alleges a BSDR Violation.***

GNC argues Plaintiff's transfer allegations are "bald and conclusory" while ignoring the Complaint's document-grounded factual predicates.

*First*, GNC's own Privacy Policy admits it shares users' "Personal Data"—expressly including, among other things, "IP address…unique device identifiers" and cookie identifiers—with "GNC's parent, subsidiaries, or related entities[.]" ¶¶72, 93, 135. Harbin is GNC's parent and a covered person, ¶¶8, 19, 24, 48. GNC's only response—the EU-limitation argument—fails, as discussed below.

*Second*, the Privacy Policy's parent-sharing admission and reliance on standard contractual clauses ("SCCs") that are legally insufficient under the BSDR, ¶¶73-74, supports the plausible inference that GNC's controls are inadequate—although, as discussed below, the exemption is GNC's burden.

*Third*, GNC cannot claim ignorance. Its industry group flagged in the DOJ rulemaking that cookies and advertising identifiers—exactly what GNC's trackers collect, ¶¶52-53, 131—are "covered personal identifiers" and lobbied for their exclusion; DOJ refused; GNC continued anyway. ¶¶77-85.

*Fourth*, GNC's own filings confirm the covered investment relationship. GNC's Answer pleads a 2018 Letter of Assurance among GNC's predecessor, Harbin, and CFIUS concerning data governance and compliance controls, Ans. ¶¶247-250—an instrument that exists only because regulators identified the risk of Harbin's access to GNC's data when it acquired a minority of GNC. U.S. Senators subsequently demanded review of Harbin's complete acquisition of GNC from bankruptcy precisely because "[e]fforts to obtain personal and sensitive data related to health information of U.S. persons must be reviewed with an understanding of the…intelligence aims of the" PRC, ¶70, and legislation has been introduced to address GNC's data-exposure risks. ¶71. Notably, although GNC's Answer asserts the LOA exempts it from the BSDR, Ans. ¶253-54, GNC's motion does not argue exemption—presumably because a 2018 letter concerning a superseded minority investment in a now-bankrupt predecessor cannot be "a CFIUS action for purposes of" a rule promulgated seven years later. 28 C.F.R. § 202.508(b)(9); *see also* ECF 26 at 2 n.1.

*Fifth*, GNC's demand for transfer-level specificity misreads the rule. Mot. at 19:25-20:2. The BSDR's prohibitions are prophylactic and turn on *access*, not a specific transfer—a "covered data transaction" is any transaction involving "any *access* by a country of concern or covered person to any…bulk U.S. sensitive personal data," 28 C.F.R. § 202.210 (emphasis added); *see also id.* § 202.201

(defining access). The rule regulates the access-conferring *arrangement* (data brokerage, vendor, employment, or investment agreements), not a discrete handoff. *Id.* §§ 202.401, 202.301, 202.228, 202.217, 202.258.[3] Plaintiff need not allege GNC pushed a specific file to Harbin's servers on a specific date—only a relationship affording Harbin access to bulk U.S. sensitive personal data, which he has. ¶¶35, 42-45, 48-49, 56, 62, 93, 125, 132-137. And a transfer, though not required, is pleaded via the Privacy Policy admission above. ¶¶72, 93, 135.

***4. GNC's EU-Limitation Argument Is Not Properly Before the Court and Is Wrong.***

**Incorporation by Reference is Inappropriate.** At the threshold, GNC's EU-limitation argument requests incorporation of "Exhibit A, GNC Privacy Policy"—but GNC failed to attach any Exhibit A to its motion. Mot. at 20:9-12 & n.2. The Court cannot consider a document that is not before it; incorporation should be denied and the arguments premised on the unattached Policy disregarded. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (a condition of incorporation is the document is "attached to the…motion"); *see also* C.D. Cal. L.R. 7-5(b), 7-6, 11-5.2; *id* 7-12 (court may decline to consider document not filed); ECF 10 (requiring compliance with local rules). Even if attached, incorporation would be inappropriate because GNC's EU-limitation argument asks the Court to adopt GNC's contested *interpretation* of its Policy over Plaintiff's contrary, more reasonable, reading. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

**The Privacy Policy's Plain Text.** GNC's reading is also unreasonable. The Privacy Policy is a single, unified document that opens with a global scope statement—it "applies to data and information collected through websites we own and/or operate." The EU sub-section GNC invokes contains a materially identical scope statement—and the parent-sharing disclosure contains no geographic

[3] Although 28 C.F.R. § 202.214 addresses commercial transactions involving the "transfer" of data, it prohibits the transaction itself—not the transfer. And, investment, employment, and vendor agreements do no mention transfer at all.

limitation, stating only that GNC discloses data "to GNC's parent, subsidiaries, [and] related entities," not that GNC shares only EU residents' data. Other provisions outside that section are entirely consistent with Plaintiff's reading and confirm that GNC discloses user information to "[a]n affiliated business of GNC." No provision states that U.S. users' data is treated differently or withheld from GNC's parent; the disclosure thus describes GNC's actual, global data-sharing practices. To the extent any ambiguity remains, it must be construed against GNC "with peculiar force" as the drafter of a contract of adhesion. *See Congdon v. Uber Techs., Inc.*, 291 F.Supp.3d 1012, 1024 n.14 (N.D.Cal. 2018); *cf. Calhoun v Google*, 526 F.Supp.3d 605, 620 (policies "must have only one plausible interpretation for" dismissal based on them).

***5. GNC's Latest Exemption Argument Fails and Concedes a BSDR Violation is Alleged.***

GNC's latest exemption argument is self-defeating. GNC argues that the data-brokerage theory fails because the parent-subsidiary relationship between GNC and Harbin constitutes an "investment agreement" under section 202.228, which is excluded from the definition of "data brokerage" under section 202.214. That argument concedes the predicate for Plaintiff's separately pleaded § 202.401 theory, ¶¶44-45, 49, 125, 137, which prohibits covered data transactions involving investment agreements with covered persons. 28 C.F.R. §§ 202.401, 202.228; ¶¶44-47. GNC's ownership by Harbin is an investment agreement, ¶¶7 n.2, 24-30, 45-49; Ans. ¶¶24-25, Harbin is a covered person, ¶¶33-34, 48, 127; and Plaintiff expressly alleges GNC engages in such restricted transactions. ¶¶45-49, 56, 74, 125, 137.

Further, GNC's reading of the "exclusion" is incorrect; it does not foreclose the data-brokerage theory. Section 202.214 excludes from the definition of a data brokerage the other means of access forbidden by the BSDR—an employment, investment, or vendor agreement. 28 C.F.R. §§ 202.214, 202.228, 202.217, 202.258. That exclusion must be read narrowly to preserve the prohibition's primary operation, *Comm'r v. Clark*, 489 U.S. 726, 739 (1989), and in context of the regulatory scheme

as a whole, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Accordingly, the four transaction categories are complementary pathways to liability. GNC's contrary reading produces an absurd result—a covered person could acquire an equity stake in any U.S. data holder and thereby license unlimited bulk sensitive data free of the data-brokerage prohibition. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). The better reading is that the exclusion removes from the data-brokerage definition only access that occurs *by virtue of* the investment relationship itself. This is particularly the case because data brokerage transactions are *prohibited* whereas investment agreements are *restricted* transactions that can be conducted with controls. 28 C.F.R. §§ 202.301, 202.401. Where a covered person gains access to covered personal identifiers through, *e.g.*, a licensing arrangement, or another commercial relationship, that access is a data-brokerage within 202.214's plain meaning—regardless of ownership.

***6. Security Controls Are GNC's Burden and Non-Compliance Is Alleged.***

GNC's argument that Plaintiff failed to plead non-compliance with the security controls for his restricted transactions theory inverts the burden. The BSDR specially provides that "[f]or purposes of determining whether a transaction is a covered data transaction, access is determined without regard for the application or effect of any security requirements." 28 C.F.R. §§ 202.201. And, the Rule restricts covered data transactions "unless" the U.S. person complies with the security requirements—a proviso structure under which the party claiming an exception's benefit—GNC—bears the burden. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91-92 (2008).

In any event, Plaintiff alleges non-compliance—GNC safeguards parent-sharing only through SCCs, ¶¶72-73, but the BSDR requires far more than the SCCs the GDPR accepts. *Compare* Regulation (EU) 2016/679, art. 46(2)(c) (SCCs suffice), *with* 28 C.F.R. §§ 202.401, 202.248 (requiring access controls, data minimization, encryption, and restrictions on onward transfer), ¶¶46-47, 74.

//

***C. CIPA is an All-Party Consent Statute.***

GNC is wrong that the "party exception" applies to CIPA section 631. Mot. at 23:12-22, 26:4-12. Unlike ECPA, CIPA is an all-party consent statute. *Compare* 18 U.S.C. § 2511(2)(d) *with Ribas v. Clark*, 38 Cal.3d 355, 361 (Cal. 1985). And, although a party cannot eavesdrop on its own conversation, that is not the basis of Plaintiff's claims. Mot. at 23:16-17, 26:7-10. Rather, Plaintiff alleges that GNC aided third parties in intercepting communications, which even GNC's authority agrees is viable. *Compare* Mot. at 23 (citing *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) ("Thomas did not allege that Papa John's violated section 631 by aiding another party in eavesdropping")) *with* ¶¶148-152, 166 (expressly alleging GNC aided third-parties); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1-2 (N.D. Cal. Oct. 23, 2019) (section 631 claim alleged where website operator aided third parties). GNC advances no other arguments in support of dismissal of Plaintiff's section 631 claim so judgment cannot be entered.[4]

***D. The Crime-Tort Exception Defeats ECPA's Party Exception.***

Each of GNC's arguments against application of the crime-tort exception on the basis of the BSDR are misguided.[5]

**Crime.** GNC concedes that the BSDR provides for criminal liability but argues that Plaintiff has not alleged willfulness because it "failed to allege any facts to suggest that GNC actually transferred any data to Harbin." Mot. at 23-24. As discussed above, the BSDR regulates access—not "actual[]transfers." In any event, Plaintiff pleads sufficient facts for the plausible inference that GNC willfully violated the BSDR. ¶¶11, 56, 60-63, 67-85, 124-125, 136-137. *Zocco v. Nelnet, Inc.*, is

[4] Although unraised and waived, CIPA's party-extension exception is also clearly inapplicable. *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 900-01 (N.D. Cal. 2023) (third parties with capability to use communications not party extensions); ¶¶27-29, 59-64, 91-94, 112-117, 131, 138, 150-152, 176, 213 (alleging third parties have same).

[5] As discussed above, GNC does not address the separately-pleaded basis that invasion of privacy or intrusion upon seclusion satisfy the exception. *See* § III.B.1.

materially distinguishable because there, unlike here, the plaintiff "fail[ed] to state how [Defendant] allegedly violated [at-issue] laws." *Compare* 2026 WL 242037, at *4-5 (N.D. Cal. Jan. 29, 2026) *with* ¶¶31-49, 67-68, 124-137 (alleging how GNC violated the BSDR).

**Tort.** GNC also argues that a violation of the BSDR "is not a tort." Mot at 24. Caselaw disagrees. *Baker* 2026 WL 1734901, at *6 ("an action for damages under the BSD[R] regulations is a tort action" satisfying the exception). And, GNC's cited case supports that interpretation. *S. Cal. Pizza Co. v. Certain Underwriters at Lloyd's* 252 Cal.Rptr.3d 635, 644-45 (Cal. Ct. App. 2019) addressed Labor Code § 2802, which was held a tort because it provides a remedy to employees by allowing the Labor Commissioner to enforce the statute—no different than the BSDR, which allows the DOJ enforcement. *Compare* Cal. Lab. Code §§ 2802, 98 *with* 28 C.F.R. §§ 202.1301-1303. Section 2802 also allows employees to alert the Labor Commissioner of violations—again, no different than the BSDR, which provides for reporting to DOJ. *Compare* Cal. Lab. Code § 2802 *with* 28 C.F.R. §§ 202.1102-202.1201.

**Purpose.** Finally, GNC is also incorrect that the Complaint "contains no factual allegations to support a conclusion that GNC's 'purpose' was to violate the BSDR." Mot. at 25. To the contrary, the Complaint pleads that GNC knowingly and systematically used intercepted identifiers "for the purpose of sharing U.S. consumers' data with covered persons," ¶11; itself intentionally integrated and deployed the Tracking Technologies, ¶¶50-52, 112, "so that it could then share that information with" Harbin ¶62; this was "undertaken knowingly and intentionally for the purpose of…the unlawful transmission of bulk U.S. sensitive personal data" ¶124; and, among other facts, continued these practices after DOJ rejected its industry group's request to exclude these very identifiers. ¶¶77-84. This more than adequately alleges purpose. *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149, 1166 (C.D. Cal. 2026).

And although GNC asserts the exception does not apply because Plaintiff "does not allege that GNC did or planned to recognize any pecuniary or commercial benefit from its disclosure of data to Harbin," Mot. at 25, no commercial benefit is required to allege that the crime-tort exception is satisfied. *Garcia*, 825 F. Supp. 3d at 1166.

Moreover, purpose "may be alleged generally," Fed. R. Civ. P. 9(b), and is a fact question inappropriate for resolution on the pleadings. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F.Supp.3d 615, 687 (N.D.Cal. 2019) (purpose is "for the jury.").

Finally, GNC's purpose argument addresses only the BSDR; it never confronts the independently pleaded tortious purposes of invasion of privacy and intrusion upon seclusion through profile creation and dissemination, ¶138(a)-(b), which its own case law found sufficient. *Dellasala*, 2026 WL 1138358, at *10.

***E. CIPA Section 632—Plaintiff Reasonably Expected Confidentiality.***

Communications are confidential where, as here, a party reasonably expects that confidentiality. *Skullcandy*, 2026 WL 699819, at *18; *see also M.G. v. Therapymatch, Inc*., 2024 WL 4219992, at *5 (N.D.Cal. Sept. 16, 2024) (rejecting argument that internet communications are presumptively non-confidential).

Moreover, Plaintiff's health-related communications are confidential irrespective of medium. *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 798 (N.D. Cal. 2022) (explaining that "health-related communications" are "uniquely personal" and confidential); *see also Yockey v. Salesforce, Inc.*, 688 F.Supp.3d 962, 973–74 (N.D. Cal. 2023) (similar); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. Jul. 25, 2025) (similar); *M.G*, 2024 WL 4219992, at *5 (similar). The BSDR also gives Plaintiff reasonable confidentiality expectations. *In re Meta Pixel*, 647 F.Supp.3d at 799 (internet communications confidential where "protected by federal law"). Further, GNC's omissions support Plaintiff's confidentiality expectations. *See Rack Room*, 2025 WL 1085169 (N.D. Cal. April 4,

2025) at *5 (privacy misrepresentation satisfies confidentiality); *Brown v. Google LLC*, 685 F.Supp.3d 909, 936-37 (N.D. Cal. 2023) (privacy misrepresentations and omissions satisfied same); ¶¶73-74, 76, 123, 178.

Unlike here, in *Revitch*, the website was clothing-related, not health-related; there was no content of communications at issue; there was no alleged BSDR violation; and no alleged misrepresentations or omissions. *Compare* 2019 WL 5485330 * 3, *with* ¶¶24, 67-68, 73-76, 88-89, 120, 123, 178 and *Skullcandy*, 2026 WL 699819 ("Plaintiff has sufficiently alleged a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties") ; *see also In re Meta Pixel*, 647 F.Supp.3d at 799 (distinguishing *Revitch*). To the extent any ambiguity remains, this issue "is a 'fact-intensive inquiry' that is often too difficult to resolve at the pleadings stage." *Smith v. YETI Coolers*, 745 F.Supp.3d 933, 945 (N.D. Cal. 2024).

### *F. Invasion of Privacy and Intrusion Upon Seclusion—GNC's Authorities Support Plaintiff's Position.*

**Reasonable Expectation.** GNC's reasonable-expectation argument misreads the cases it cites and ignores the specific allegations in the Complaint. GNC misleadingly cites to *Revitch's* discussion of section 632's confidentiality requirement which is irrelevant to the reasonable-expectation analysis. In fact, *Revitch* supports Plaintiff's position, finding the defendant-website-operator "allow[ing a third party] to associate [Plaintiff's] browsing habits with his identity" was "a highly offensive breach of norms," even where the browsing concerned a apparel—less sensitive than the health information here. *Revitch*, 2019 WL 5485330, at *3.

*In re Apple Data Privacy Litig.*, also cuts against GNC. It expressly recognized that there is a reasonable expectation of privacy in URLs that "reveal information about a user's internet activity," distinguishing only "more general

URLs" like "www.apple.com" that "do not reveal more personal information." 2026 WL 146025, at *10 (N.D. Cal. Jan. 20, 2026).[6] The full-string URLs at issue here are not general—they reveal Plaintiff's health interests. ¶¶88-89, 92, 197. Even GNC's motion concedes that its website is health-related (Mot. at 9:1); it cannot simultaneously argue the URLs reveal no "health" information. Mot. at 28:4

*YETI Coolers* found a reasonable expectation of privacy on facts comparable here and expressly rejected the argument GNC advances. Mot. at (citing 754 F.Supp.3d at 945). *YETI* distinguished cases where third-parties made no independent use of the information—here, Plaintiff alleges exactly that. *Compare id. with* ¶¶27-29, 56, 93-96. In sum, GNC's authority establishes a reasonable expectation of privacy here. *See also, e.g., Toy*, 2024 WL 1701263, at *3 (reasonable expectation in health products).

**Highly Offensive.** Determining the "offensiveness" of a privacy intrusion "requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook*, 956 F.3d at 606. Accordingly, "[t]he ultimate question" of whether certain practices "could highly offend a reasonable person is an issue that cannot be resolved at the pleading stage." *Id.*; *Toy*, 2024 WL 1701263, at *3 (same); *Hart v. TWC Prod. & Tech. LLC*, 526 F.Supp.3d 592, 602 (N.D. Cal. 2021) (similar).

Even if the offensiveness inquiry could be resolved at this stage, it would be satisfied here—each holistic factor weighs decisively in Plaintiff's favor.

***Likelihood of harm***. The data GNC made accessible to Harbin—operating under PRC intelligence laws compelling surveillance cooperation, ¶¶27-30—is be used to "assemble detailed behavioral profiles, identify psychological or financial weaknesses, and monitor individuals in sensitive roles," and to facilitate "coercion,

[6] *Apple* also acknowledged that privacy claims are viable where defendants "acquired 'highly personalized profiles from sensitive browsing histories and habits'"—which Plaintiff alleges and GNC fails to address. *Id.*; ¶¶60-62, 93-94.

reputational harm, and/or blackmail." ¶¶15-16. The BSDR was enacted specifically to address these harms. ¶¶1-3, 66.

***Degree and setting***. GNC is a health retailer, and the URLs it aided third parties in intercepting and made accessible to a covered person reveal the specific health products Plaintiff searched for and purchased. ¶¶88-89, 92, 197. GNC aggregated persistent identifiers across sessions into enriched profiles—surveillance categorically more offensive than isolated data collection. ¶¶59-62, 93, 217-219.

***Motive and objectives***. GNC was fully aware of the BSDR's requirements—its own industry group lobbied DOJ to narrow the relevant provisions; DOJ refused; GNC continued. ¶¶75-85. Further, GNC deceitfully allowed third parties to intercept Plaintiff's communications without consent. *See In re Google Location Hist. Litig.*, 514 F.Supp.3d 1147, 1157 (N.D. Cal. 2021) ("[D]eceit can be a kind of 'plus' factor" in the highly offensive inquiry).

***Countervailing interests.*** No legitimate commercial interest justifies exposing Americans' health-related data to a foreign adversary. The social norms embodied in the BSDR itself confirm the intrusion's severity.

**GNC's Authority Has Been Reversed.** GNC's highly offensive argument rests principally on *Shah v. Capital One Financial Corp.*, 768 F.Supp.3d 1033, 1047 (N.D. Cal. 2025) and the cases it cites. But, the court there subsequently reversed, rejected the conclusion GNC urges, and expressly repudiated and the case law on which GNC relies. *Ingraham v. Capital One Financial Corp.*, 2026 WL 1755170, at *6-7 (N.D. Cal. May 22, 2026); *see also MyFitnessPal*, 2026 WL 216334, at *5 ("Cases decided prior to the 2020 adoption of the CCPA are thus of limited value").

### *G. CDAFA—GNC's Authorities Are Out-Dated and Inapposite.*

**Without Permission.** Contrary to Defendant's argument, "the Ninth Circuit has already interpreted CDAFA not to require circumventing technical barriers to show that data was 'use[d]' 'without permission'" *Compare Tsering v. Meta Platforms, Inc*. 2026 WL 89320, at *6 (N.D.Cal. Jan. 12, 2026) (citing *United States*

*v. Christensen*, 828 F.3d 763 (9th Cir. 2015)), *with* MTD at 29. Plaintiffs sufficiently allege Defendant knowingly and impermissibly deployed Tracking Technologies that accessed and copied Plaintiffs' personal data. *Compare* ¶¶50-53, 59, 112-118, 229-230, *with Rack Room*, 2025 WL 1085169, at *6. GNC's only post-*Christensen* case, *Rodriguez v. Google LLC*, 2024 WL 1486139, at *4 (N.D. Cal. Apr. 5, 2024), relies on a pre-*Christensen* authority and found the element satisfied at class certification.

**Damage or Loss**. "[A] defendant's alleged unjust profit from the use of a plaintiff's personal information, which holds financial value to the defendant, can plausibly constitute a 'damage or loss' under CDAFA." *Compare Tsering,* 2026 WL 89320, at *5, *with* MTD at 30. "Because California law requires disgorgement of unjustly earned profits, a plaintiff has a stake in profits garnered unjustly from their data and is damaged under CDAFA by not having received a share of those profits." *Id*. Plaintiffs sufficiently allege Defendant derived value from their data. *Compare Smither v. Rack Room*, 2025 WL 2210002, at *3 (N.D. Cal., Aug. 4, 2025), with ¶¶172-176, 229-232.

GNC relies exclusively on *Doe v. Tenet Healthcare Corp*., 789 F.Supp.3d 814 (E.D. Cal. 2025), which did not consider the disgorgement theory endorsed by *Facebook*, 956 F.3d at 600. A disgorgement theory like that at issue here is "sufficient to establish…[that] plaintiffs have suffered 'damage' under CDAFA." *Rack Room*, 2025 WL 2210002, at *3; *see also Rodriguez v. Google LLC*, 772 F.Supp.3d 1093, 1109 (N.D. Cal. 2025) (same).

***H. UCL—GNC Fails to Address Benefit-of-the-Bargain.***

**Article III.** Contrary to GNC's argument, for the reasons discussed above, Plaintiff satisfies Article III. *See* § II.

**Statutory Standing.** GNC fails to recognize that Plaintiff satisfies UCL standing through a "benefit of the bargain" theory—not a diminution in value of data theory. *Kwikset Corp. v. Superior Ct*., 51 Cal.4th 310, 323 (2011). When using and making a purchase on the Website, he reasonably understood that Defendant would

maintain the confidentiality of his personal information—and had he known Defendant allowed PRC-controlled entities to access his data, he would not have made purchases or would have paid less. *Compare Doe v. Tenet Healthcare Corp*., 789 F.Supp.3d at 846-47 and *Toy*, 2024 WL 1701263, at *2-3, *with* ¶¶97, 178, 242-243. Further, omissions of material fact support a benefit-of-the-bargain injury. *Donohue v. Apple, Inc*., 871 F.Supp.2d 913, 921 (N.D. Cal. 2012). Defendant had exclusive knowledge of the trackers deployed, the recipients, the profiling, and the covered-person access; the Tracking Technologies operated silently and Defendant "actively concealed its data collection and sharing practices from users." *Compare Tenet*, 789 F.Supp.3d at 847 and *Toy*, 2024 WL 1701263, at *2-3 (omission theory sustained where pixel invisible), *with* ¶¶114-118, 123, 178.

**Predicate Violation.** Plaintiff alleges both unlawful and unfair UCL violations. ¶¶238-241. GNC attacks only the unlawful prong. That prong is satisfied by the alleged violations of the ECPA, CIPA, CDAFA, BSDR, and invasions of privacy. ¶238; *see also* §§ III.B-F. The unfair prong is independently satisfied. The harm is severe, not outweighed by any countervailing benefit, and was not meaningfully avoidable. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718 (2001).

### *I. Unjust Enrichment–Retained Benefits at Plaintiff's Expense.*

Contrary to GNC's argument, "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiff adequately alleges GNC unjustly benefitted from facilitating the interception of communications at Plaintiff's expense. *Compare* ¶¶51-53, 56, 59-62, 112-113, 172-179 *with Hart v. TWC Prod. & Tech. LLC*, 526 F.Supp.3d 592, 605 (N.D. Cal. 2021).

## IV. CONCLUSION

GNC's motion should be denied in full. Alternatively, Plaintiff respectfully

requests leave to amend. *See, e.g., Sec. & Exch. Comm'n v. Payward, Inc.*, 763 F. Supp. 3d 901, 907 (N.D. Cal. 2025).

Dated: July 6, 2026

**ALMEIDA LAW GROUP LLC**

By: */s/ Victor J. Sandoval*
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd, Suite 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice*)
Stephanie Reed (*pro hac vice*)
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 6, 2026

By: */s/ Victor J. Sandoval*
Victor J. Sandoval