MICHAEL J. DUVALL (Bar No. 276994)
michael.duvall@dentons.com
POOJA L. SHAH (Bar No. 330550)
pooja.l.shah@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924

FRIDRIKH V. SHRAYBER (admitted *pro hac vice*)
fred.shrayber@dentons.com
ALEXIS B. THURSTON (admitted *pro hac vice*)
lexie.thurston@dentons.com
DENTONS COHEN & GRIGSBY
625 Liberty Avenue
Pittsburgh, PA 15222
Tel: (412) 297-4900

Attorneys for Defendant
GNC Holdings, LLC

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANTHONY MALKO, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

GNC HOLDINGS, LLC,

Defendant.

Case No. 2:26-cv-01833-MCS-AJR

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: July 27, 2026
Time: 9:00 a.m.

***TAKEN UNDER SUBMISSION***

Judge: Hon. Mark C. Scarsi
Ctrm: 7c

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## I. INTRODUCTION

Malko's Opposition tries to disorient the reader through a rapid-fire succession of conclusory legal arguments accompanied by a litany of cursory legal citations. But a careful review of the parties' briefs demonstrates that his Opposition, like much of his Complaint, is a one-size-fits-all document that distorts GNC's arguments and the Complaint's allegations to try to make them fit within Malko's narrative.

Read closely, Malko's Opposition fails to address the fundamental deficiencies in his Complaint identified by GNC and curiously side-steps recent on-point authority that forecloses Malko's claims for lack of standing. He lacks Article III standing because browsing a health-and-wellness retail website does not implicate sensitive health data. That failure alone requires a dismissal of the Complaint. He has also failed to plead any facts supporting a BSDR violation, and his abstention and crime-tort arguments are unsupported by the authority he cites. The Court should dismiss the Complaint in its entirety, with prejudice.

## II. LEGAL ARGUMENT

### A. Plaintiff Lacks Article III Standing.

As discussed in GNC's Motion, Plaintiff lacks Article III standing because Plaintiff's Complaint does not allege a concrete privacy injury. Plaintiff's Opposition ignores recent, unfavorable case law in favor of easily distinguishable opinions.

#### *1. Plaintiff's "Health" Data Is Not Implicated.*

Plaintiff's contention that the data GNC allegedly collected (URLs that "reveal interest in health-related products") is "sufficiently sensitive" to confer standing ignores contradictory, on-point case law from this Court. In *Schallert v. Laird Superfood, Inc.*,[1] the plaintiff sued a health and wellness retailer asserting

---

[1] *Schallert* was handed down approximately one week after GNC submitted its Motion.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

claims for violations of CIPA, CDAFA, and the UCL, as well as invasion of privacy and intrusion upon seclusion. No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585, at *1-2 (C.D. Cal. June 5, 2026). Schallert argued that the defendant had captured information that "reflected the pages [p]laintiff accessed and his interactions with the [w]ebsite" that could "reveal [plaintiff's] highly sensitive health-related information, including an individual's dietary restrictions, nutritional needs, potential medical conditions, and personal health goals." *Id.* at *5.

The court found that Schallert lacked standing to sue, reasoning that "it is not clear that [d]efendant's website—a site where users read about nutrition, explore recipes, and learn about and purchase products designed to support their health," is capable of capturing the type of "embarrassing, invasive, or otherwise private" information necessary to show a concrete injury to privacy." *Id.* at *5 (*quoting Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)) (internal citation omitted). The court concluded that the plaintiff had "not alleged that he personally interacted with the website in a manner that revealed any 'highly sensitive health-related information'" and thus had "not shown that the alleged tracking program implicates his control of information concerning his person, let alone that defendant's conduct constituted the type of "highly offensive" intrusion sufficient to constitute a concrete injury." *Id.* at *5-6 (cleaned up). Accordingly, the court concluded that the plaintiff had not established standing and dismissed the complaint in its entirety. *Id.*

Here, the same result is warranted. GNC and the *Schallert* defendant are both health and wellness retailers that operate websites where users can browse for and purchase health and wellness products. Moreover, the allegations in *Schallert* are even more specific than Plaintiff's; where the plaintiff in *Schallert* alleged that the information collected could reveal his "dietary restrictions, nutritional needs, potential medical conditions, and personal health goals," Malko merely alleges that

the URLs "revealed [his] interest in health-related products." (Pl.'s Opp. at 5.) As discussed in GNC's Motion, Malko fails to allege what, if anything, he actually viewed or searched or when, or what information was "collected" about him – other than his purported search for and purchase of a pre-workout energy drink. (Compl. ¶ 89.) Malko attempts to obfuscate this failure by including a string citation to Complaint paragraphs that do not actually support his propositions. Each cited paragraph only generically alleges that GNC collected information such as "full-string URLs" and "persistent identifiers" regarding his search for "LIT On-The-Go Pre-Workout." (Pl.'s Opp. at 5, (*citing* Compl. ¶¶ 12, 88, 92).) Malko relies on this tactic throughout his opposition brief. As in *Schallert*, Malko simply has not pleaded that GNC collected information that could support a finding of concrete injury.

Plaintiff's case law to the contrary is all distinguishable. In *Toy v. Life Line Screening of Am. Ltd.*, the defendant disclosed URL information revealing specific at-home health tests that the plaintiff had ordered from defendant. That court concluded that the plaintiff "expected that maintaining the confidentiality of her health information was part of what she was paying [defendant] for when she purchased an at-home health test[.]" No. 23-CV-04651-RFL, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024). In *Gabrielli v. Haleon US Inc.*, the defendant operated websites marketing specific, brand-name medications and continued tracking plaintiffs' personal health information after they rejected cookies. 815 F. Supp. 3d 852, 860, 865-67 (N.D. Cal. 2025). Finally, in *Shah v. MyFitnessPal, Inc.*, plaintiffs logged specific personal health data (including diet and exercise logs) into a health-tracking app and opted out of third-party cookies. 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026). Each of these cases involves sensitive and specifically-identified individual health information disclosed to third parties—and in *Gabrielli* and *MyFitnessPal*, the disclosures occurred after the plaintiffs

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

expressly rejected tracking. None of those allegations are present here, and these cases do not demonstrate that Plaintiff has standing.[2]

***2. Plaintiff Has Not Alleged That He Was Actually Injured.***

Plaintiff's Opposition fails to meaningfully address Malko's lack of actual injury. Plaintiff never alleged that GNC actually created a comprehensive user profile about him or otherwise de-anonymized or identified him, and Plaintiff's Opposition only underscores this fact. Again, Malko's Opposition cobbles together snippets of disparate allegations where Plaintiff opines about what GNC *could* have done in an attempt to point to an injury that is not alleged. (Pl.'s Opp. at 6-7.) "Allegations about what the website *could* capture, as opposed to what it *did* capture from Plaintiff, are insufficient to confer standing." *Schallert*, 2026 WL 1707585, at *5 (emphasis in original).

***3. Plaintiff Has Not Alleged a Concrete Economic Injury.***

As discussed above, Plaintiff has not adequately pleaded a cognizable privacy injury because he has not pleaded that his information was actually used to assemble a profile or otherwise identify him. As a consequence, Plaintiff has failed to plead that he has suffered any economic injury.

**B. GNC Did Not Move for "Partial" Judgment on the Pleadings.**

GNC did not move for "partial" judgment on the pleadings, and Plaintiff's contention that "every claim GNC attacks rests on independent, non-BSDR-related grounds its motion never addresses" is incorrect. In its Motion, GNC explains why

---

[2] Plaintiff's assertion that "GNC relies on cases that address only IP addresses" is incorrect. (Pl.'s Br. at 5-6.) GNC cited cases holding that plaintiffs had no standing despite allegations of broad personal information collection. *See, e.g.*, *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *1 (N.D. Cal. June 24, 2025) (no standing despite collection of "device and browser information, geographic information, referral tracking, and URL tracking" and scanned for the user's name, date of birth, and address such that "each person who visits the Website can be personally identified"); *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-CV-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (no standing despite collection of "unique and persistent identifiers" including "browsing behavior," "browsing preferences" and "other identifying information").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Plaintiff's ECPA, CIPA, UCL, invasion of privacy, and intrusion upon seclusion claims each independently fail as a matter of law. (Mot. at 23-31.) *Schallert* confirms this conclusion. The *Schallert* plaintiff alleged that the defendant had collected information that reflected the webpages that plaintiff had viewed on the defendant's website, which sold health and wellness products. 2026 WL 1707585, at *1. The court concluded that the plaintiff's invasion of privacy, intrusion upon seclusion, and UCL claims failed because "common law provides for liability only where the intrusion would be highly offensive to a reasonable person," and "[i]nformational privacy rights, like those at issue here, are not absolute and protect only against the dissemination or misuse of *sensitive and confidential* information. *Id.* at *6 (emphasis in original) (internal marks omitted). Because the plaintiff there had failed to demonstrate that the information disclosed by defendant "was 'sensitive and confidential' and would result in 'unjustified embarrassment,'" his claims failed as a matter of law. *Id.* (The court had earlier determined that the plaintiff's CIPA and CDAFA claims failed for similar reasons.) The same result is warranted here.

**C. GNC's Abstention and Primary Jurisdiction Arguments Stand.**

Plaintiff's reliance on *Baker v. Index Exchange Inc.* is misplaced because the unique considerations underlying GNC's abstention argument are absent in *Baker*. 2026 WL 1734901 (N.D. Ill. June 16, 2026). The defendants in *Baker* made no abstention argument at all, and the court was never faced with the specific issues GNC has raised. Specifically, *Baker* did not consider the complexities of assessing and resolving whether a defendant has complied with the BSDR, especially under the circumstances present here. Resolving this case would require assessing GNC's compliance with not only the BSDR but also with an existing Letter of Assurance between GNC's predecessor-in-interest, Harbin, and CFIUS.

These tasks fall exclusively within the DOJ's purview in the first instance, as discussed more fully in GNC's opening brief.

Plaintiff's primary jurisdiction argument fails for similar reasons. *Baker* does not resolve the question presented here: whether a court should adjudicate compliance with the BSDR in a context where the DOJ has already imposed compliance obligations and retains exclusive supervisory authority over GNC's data-governance obligations. This is precisely the type of "particularly complicated issue that Congress has committed to a regulatory agency" warranting deference. *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 963 (N.D. Cal. 2014). Moreover, Plaintiff's bald claim that this case does not present an issue of first impression is belied by the fact that Plaintiff could only identify a single, unpublished case discussing the BSDR under completely different circumstances – and from a different circuit entirely.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**D. Plaintiff Fails to Plead a BSDR Violation.**

***1. No Factual Allegation of Transfer or Access***

Plaintiff's Opposition does not cure the fundamental deficiency in his Complaint: the absence of any non-conclusory factual allegation that GNC transferred data to Harbin, or that Harbin accessed data from GNC's U.S. operations. Even with the benefit of a 22-page Opposition, Plaintiff has not explained how data flowing from GNC's website to "first and third-party servers" belonging to operators of third-party tracking technologies such as Google, Meta and Snapchat supports a theory of liability requiring the flow of data from GNC's website to Harbin's servers.

Plaintiff argues in his Opposition that he need only allege a "relationship affording Harbin access to bulk U.S. sensitive personal data," not that GNC actually transferred data to Harbin or permitted it to access that data. (Pl.'s Opp. at 12.) This position belies logic. Accepting Malko's position as true would be to

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

accept that any company with a parent company located in China or a "country of concern" can be held liable for civil damages predicated on a violation of the BSDR, even if an actual transfer of or access to sensitive bulk data never occurred. That is clearly not the law.

Malko's only data-sharing allegation that is arguably rooted in more than mere conjecture is set forth in Paragraph 72, which quotes a provision of GNC's Privacy Policy.[3] As explained in GNC's opening brief, that provision cannot serve as the factual basis for Malko's BSDR-violation allegation because it is, on its face, applicable only to residents of the European Union, (Mot. at 20-21), and it does not otherwise support the conclusion that Malko's information was ever transferred (or made accessible) to Harbin. The cited provision of the policy falls under a large, bolded heading that reads "GNC Privacy Statement – EU Residents," as well as a clarifying statement that "[t]his policy is applicable to residents and individuals located in the European Union." This section is set apart from other, more broadly applicable policies and policies that are designated as only applicable to residents of other geographic areas, such as California. Malko's interpretation of GNC's Privacy Policy is not reasonable, and neither it nor any other alleged fact supports the conclusion that GNC has violated the BSDR.

***2. The Investment Agreement Exclusion Applies.***

GNC's argument is straightforward: the relationship between GNC and Harbin constitutes an "investment agreement" under 28 C.F.R. § 202.228, which is excluded from "data brokerage" under § 202.214. (Mot. at 21-22.) Plaintiff's contention that this argument "concedes" a violation under § 202.401 mischaracterizes GNC's position. Demonstrating that an exclusion applies to one

---

[3] A copy of GNC's Privacy Policy was inadvertently omitted from GNC's opening motion and is attached hereto as Exhibit A. This omission was harmless, however, because the Privacy Policy was explicitly incorporated into Plaintiff's Complaint at ¶ 72, n.10 and is quoted at length in Malko's Opposition.

regulatory category does not concede that a covered data transaction occurred. Malko has failed to plead the threshold element of his BSDR allegations – i.e., that GNC enabled Harbin to access any bulk sensitive data collected through the Website. Malko's argument that this reading would allow any equity acquisition to license unlimited data access is a strawman. The BSDR addresses equity-based data access through the restricted-transaction regime outlined in § 202.401. This section imposes security requirements and permits covered transactions subject to controls. The exclusion of "investment agreements" from the definition of "data brokerage" in § 202.214 simply prevents a single relationship from simultaneously being classified as both a prohibited data brokerage and an investment agreement that is permitted under the BSDR with certain controls. Plaintiff's § 202.401 theory fails because no covered data brokerage transaction is pleaded with factual specificity.

***3. Plaintiff Must Plead Access Before Burden-Shifting Could Apply.***

Plaintiff argues that GNC bears the burden to demonstrate compliance with security requirements and cites 28 C.F.R. § 202.201's provision that "access is determined without regard for the application or effect of any security requirements." (Pl.'s Opp. at 14.) That argument puts the cart before the horse. Even if GNC bears the ultimate burden to demonstrate its security compliance, Plaintiff must first plead that GNC actually enabled Harbin to access Malko's personal data covered by the BSDR. Malko has not done so. GNC cannot be saddled with the burden to raise a defense where Malko has failed to plead facts supporting an underlying theory of liability.

**E. Plaintiff Fails to Satisfy the Crime-Tort Exception.**

For the reasons outlined above, Malko has failed to allege facts supporting the conclusion that GNC has committed a BSDR violation. That failure precludes his attempt to use the BSDR as a "crime" to satisfy the crime-tort exception.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Further, Malko's reliance on *Baker v. Index Exchange, Inc.* for the argument that a BSDR violation is a "tort" is misplaced. First, *Baker* is an unpublished and non-binding decision from a federal court in Illinois. Substantively, the *Baker* defendant did not argue, as GNC argues here, that the BSDR does not qualify as a "tort." Rather, it argued that it was not subject to the BSDR as a Canadian entity. 2026 WL 1734901 at *6. The *Baker* court only analyzed whether a defendant could be held vicariously liable for a purported BSDR violation by its U.S. affiliate. *Id.* The *Baker* court did not analyze or decide the issue that GNC raised in its opening Motion – i.e., whether the BSDR can serve as a "tort" underlying the "crime-tort exception" where it does not provide any private legal remedy for individuals who are allegedly "harmed" by a party's violation of the same. *Baker* is not applicable here.

To the extent *Baker* is offered by Malko for the proposition that a BSDR violation is a "tort," such an interpretation is incorrect. *Baker*'s analysis relies entirely on *United States v. Central Soya, Inc.*, 697 F.2d 165, 168 (7th Cir. 1982), which addressed whether the government's claim for damages under the Rivers and Harbors Act was governed by a federal statute of limitations applicable to claims "*founded upon a tort*," codified at 28 U.S.C. § 2415. In analyzing that question, the court looked at the legislative history of Section 2415 to determine the Senate's definition of "founded upon a tort" as used in that statute. That analysis has no application to the question of whether a BSDR violation constitutes a "tort" for purposes of the crime-tort exception applicable to Malko's claims.

Lastly, GNC's opening brief explains that Malko fails to allege an invasion of privacy as a matter of law. Absent any viable allegation that GNC committed an independent tort, Malko has failed to allege the existence of a "tortious purpose" sufficient to sustain his crime-tort exception theory.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Dated: July 20, 2026

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: */s/ Fridrikh V. Shrayber*

Fridrikh V. Shrayber (*admitted pro hac vice*)
Alexis B. Thurston (*admitted pro hac vice*)

625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Ph: 412 297 4900
Fax: 412 209 1975
Email: fred.shrayber@dentons.com
lexie.thurston@dentons.com

DENTONS U.S. LLP

Michael J. Duvall (Bar No. 276994)
Pooja L. Shah (Bar No. 330550)

601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
Email: michael.duvall@dentons.com
pooja.l.shah@dentons.com

*Attorneys for Defendant GNC Holdings, LLC*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**WORD COUNT CERTIFICATION**

The undersigned, counsel of record for Defendant GNC Holdings, LLC, certifies that this brief contains 2,990 words, which complies with the word limit set by Court order (i.e., the Court's Standing Order for Civil Cases).

Respectfully submitted,

**DENTONS COHEN & GRIGSBY P.C.**

By: */s/ Fridrikh V. Shrayber*
Fridrikh V. Shrayber (*pro hac vice*)

*Attorneys for Defendant GNC HOLDINGS, LLC*