UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:26-cv-01833-MCS-AJR** | Date | July 29, 2026 |
| Title | ***Malko v. GNC Holdings, LLC*** | | |

Present: The Honorable Mark C. Scarsi, United States District Judge

| | |
|---|---|
| Stephen Montes Kerr | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER RE: MOTION TO DISMISS (ECF NO. 31) AND EX PARTE APPLICATION FOR LEAVE TO FILE SURREPLY (ECF NO. 45)**

Defendant GNC Holdings, LLC, moves to dismiss Plaintiff Anthony Malko's complaint, or in the alternative, for judgment on the pleadings. (Mot., ECF No. 31.) Plaintiff filed a brief opposing the motion, (Opp'n, ECF No. 42), and Defendant filed a reply, (Reply, ECF No. 44). The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

At the outset, the Court briefly addresses Plaintiff's ex parte application for leave to file a surreply, (EPA, ECF No. 45), [1] to which Defendant filed an opposition, (Opp'n to EPA, ECF No. 46). A court may in its discretion permit the filing of a surreply and should exercise such discretion "only where a valid reason for such additional briefing exists." *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. EDCV 16-600 JGB (DTBx), 2018 WL 2121819, at *1 (C.D. Cal. May 7, 2018). Here, Plaintiff argues that he should be permitted to file a surreply because Defendant

[1] In the application, Plaintiff also requests that the Court strike an exhibit included in Defendant's reply brief, which Defendant omitted from its motion. (EPA 7–8.) Given the disposition of this Order, the Court declines to strike the exhibit.

newly argues in its reply brief that Plaintiff's allegations concerning his health information are insufficient to confer standing and that Plaintiff's state law claims for invasion of privacy, intrusion upon seclusion, and unfair competition are insufficiently pleaded. (EPA 5–7.) Plaintiff also argues that *Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC, 2026 WL 1707585 (C.D. Cal. June 5, 2026), a case Defendant cited in its reply, is inapposite to the theories Plaintiff advances in his pleading. (EPA 5–7.)

While courts in this circuit have exercised their discretion to authorize surreplies to respond to arguments raised for the first time in reply, *see, e.g.*, *WB Music Corp.*, 2018 WL 2121819, at *1–2, this Court rarely, if ever, considers arguments raised for the first time in reply, *see, e.g.*, *Nationstar Mortg., LLC v. Williams*, No. 2:22-cv-05759-MCS-JPR, 2022 WL 17222268, at *2 n.1 (C.D. Cal. Sept. 21, 2022) (Scarsi, J.); *Gile v. Dolgen Cal., LLC*, No. 5:20-cv-01863-MCS-SP, 2022 WL 649279, at *2 n.1 (C.D. Cal. Jan. 14, 2022) (Scarsi, J.). The arguments Plaintiff raises in his application do not suffice to allow a surreply. The Court can determine for itself whether caselaw is applicable or relevant to its analysis of Plaintiff's claims. To the extent Defendant introduces any new arguments in its reply brief that it had the opportunity to but did not raise in its opening brief, the Court does not consider those arguments. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). The application is denied.

## I. BACKGROUND

This is a data privacy putative class action. According to the complaint, Defendant is a "health and wellness retailer" that "market[s] products such as vitamins, dietary supplements, sports nutrition, and other items intended to support physical fitness, nutrition, and health." (Compl. ¶ 24, ECF No. 1.) Defendant maintains a website that uses "first- and third-party tracking implementations that measure and record user data," including both persistent identifiers, such as IP addresses, and the "full-page context" of webpages, including "full-string URLs" that reveal search terms and product pages users viewed. (*Id.* ¶¶ 50, 53.) Plaintiff visited Defendant's website multiple times, (*id.* ¶¶ 87–88), and on one occasion searched for and purchased a product called "LIT On-The-Go Pre-Workout," (*id.* ¶ 89). When Plaintiff visited Defendant's website, Defendant intercepted his data, which consisted of "persistent identifiers uniquely associated with Plaintiff—including his cookie IDs, device IDs, IP addresses, and browser metadata—along with the full URL of the specific page that Plaintiff was viewing." (*Id.* ¶ 92.) The

URL displayed both the product Plaintiff viewed and "that he was searching for health-related products." (*Id.*) Defendant used this data to "enrich[] persistent profiles and databases" that Defendant transferred or made accessible to its parent company, Harbin Pharmaceutical Group. (*Id.* ¶ 93.) Plaintiff contends that Defendant's tracking and sharing of this data "violate[d] his reasonable expectation of privacy." (*Id.* ¶ 95.)

Based on these allegations, Plaintiff brings eight claims against Defendant for (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510; (2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (3) violation of CIPA, Cal. Penal Code § 632; (4) unjust enrichment; (5) invasion of privacy in violation of the California Constitution; (6) intrusion upon seclusion under California common law; (7) violation of the Comprehensive Computer Data and Access and Fraud Act, Cal. Penal Code § 502; and (8) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. (*Id.* ¶¶ 107–244.) Plaintiff asserts claims on behalf of himself; a putative nationwide class, defined as "[a]ll individuals in the United States whose electronic communications with the Website were intercepted and whose communications and personal data—including persistent identifiers and behavioral activity—was used on or after April 8, 2025"; a California subclass; and a California purchaser subclass, defined as "[a]ll members of the California Subclass who resided in the State of California and made purchases on the Website and had electronic communications with the Website intercepted." (*Id.* ¶ 99.)

## II. LEGAL STANDARD

Only the Rule 12(b)(1) standard must be recited here. Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir.

2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

"Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "Standing . . . 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). "'[T]he irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish an injury in fact, a plaintiff must demonstrate that it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427.

Defendant argues Plaintiff fails to plead he suffered a cognizable injury in fact. (Mot. 12–15.) Plaintiff contends that he has suffered both privacy and economic injuries in fact. (Opp'n 4–8.) The Court addresses each argument in turn below.

### A. Privacy Injury

In the context of claims brought under data privacy statutes, a plaintiff typically needs to allege the disclosure of "embarrassing, invasive, or otherwise private information" to allege an actionable injury in fact. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). This may occur if the data collected is "especially sensitive," such as "health or financial information," or if "the scope of the collection [is] so broad, for example by tracking a Plaintiff's activity across other websites, that

it renders the tracking highly offensive." *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026).

Here, Plaintiff alleges that Defendant disclosed the "full-page context" of the webpages he viewed, including URL strings that "reveal[ed] the pages viewed and product viewed," as well as persistent identifiers, "including IP addresses, advertising IDs, and cookie data." (Compl. ¶ 12.) Specifically, Plaintiff alleges that he "navigated multiple product pages utilizing full-string URLs displaying the product viewed and displaying that he was searching for nutritional supplements and other health-related products" on Defendant's website. (*Id.* ¶ 88.) Plaintiff searched for, and ultimately bought, one product, "LIT On-The-Go Pre-Workout." (*Id.* ¶ 89.)

The parties disagree whether these allegations sufficiently establish an injury in fact. Defendant argues that Plaintiff lacks standing because the data disclosure alleged in the complaint is insufficient to establish a concrete injury to a privacy interest. (Mot. 12–14.) Plaintiff contends that Plaintiff's injury is actionable because "[t]he full-string URLs" of the webpages Plaintiff visited "revealed [an] interest in health-related products to third parties," and such information is sensitive. (Opp'n 5.) Plaintiff further argues that the data Defendant collected is sufficient to establish an actionable injury because Defendant gathered and transmitted identifiers that were uniquely associated with Plaintiff and used them to "enrich[]" a persistent profile of Plaintiff. (*Id.* at 5–7 (alteration in original) (quoting Compl. ¶ 93).)

Plaintiff fails to plead facts demonstrating that the information Defendant collected and disclosed was "embarrassing, invasive, or otherwise private information" giving rise to an actionable injury in fact. *Popa*, 153 F.4th at 791. At the outset, the Court notes that Plaintiff does not allege that his name, mailing address, telephone number, email address, or the like were collected or linked to the data Defendant collected. Moreover, the data Defendant did collect and disclose—Plaintiff's IP addresses, cookie IDs, device IDs, browser metadata, and the URLs of the webpages Plaintiff viewed—though uniquely associated with him, (*see* Compl. ¶ 92), are not "directly linked to his name or other personally identifiable information," *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026). Generally, courts have concluded that the collection of this data, without more, is inadequate to establish an injury in fact. *Compare Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (no standing where defendant merely intercepted IP addresses and referrer URLs), *and Maghoney*, 2026 WL 497402, at *5 (no standing where only data collected was associated "with an IP address and

other metadata" and did not include plaintiff's name or personally identifiable information), *with Semien v. PubMatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333, at *4–5 (N.D. Cal. Jan. 27, 2026) (finding standing where data broker intercepted communications that could "include sensitive information like health status and treatment, travel plans, political affiliation, [and] sexual orientation" and "created or added to detailed user profiles by tracking their interactions across the internet" in an ongoing manner), *and Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025) (finding standing where healthcare website tracked and collected data concerning user input data that included "the user's name, age, gender, email address, location, and/or payment information, [and] demographic information" in addition to device data (internal quotation marks omitted)).

"Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). Likewise, the mere collection of device-type data or browser metadata is insufficient to establish constitutional standing. *See Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025); *see also Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) ("If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location)."). While Plaintiff alleges that the data collected was uniquely associated with Plaintiff and was used to "enrich[] persistent profiles and databases," (Compl. ¶ 93), there is no allegation as to what other data comprised these persistent profiles and databases. It is true that courts have found that "engaging in unauthorized tracking and data collection" that allows a defendant "to compile detailed profiles of each plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email addresses and other personal identifiers" can produce an actionable injury. *Semien*, 2026 WL 216333, at *6 (cleaned up); *see also Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025) ("[T]he tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy."). However, data collection that is akin "to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales" does not give rise to an actionable injury. *Popa*, 153 F.4th at 791. Here, without additional allegations concerning what other data comprised Defendants' persistent profiles and databases, the data Defendant collected and transmitted—IP addresses, cookie and device IDs, browser metadata,

and webpage URLs—is analogous to a retailer watching Plaintiff browse a store's aisles. Collecting and transmitting such data does not give rise to an actionable injury.

Plaintiff also argues that the URL data Defendant collected and transmitted "revealed [an] interest in health-related products," and such information is sensitive enough to establish standing. (Opp'n 5.) "[T]racking software *could* be offensive" in circumstances "involving sensitive medical . . . information." *Popa*, 153 F.4th at 791; *see also Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (finding actionable injury from data collection "related to personal topics like nutrition and fitness tracking"). However, the fact that Defendant collected data indicating that Plaintiff searched for, viewed, and in one instance purchased health-related products, (*see* Compl. ¶¶ 88–89), does not mean that Defendant collected "embarrassing, invasive, or otherwise private information," *Popa*, 153 F.4th at 791. This Court has previously observed that "disclosing that someone merely searched for publicly available information about certain diseases or medical treatments" does not necessarily establish an actionable injury, as an internet search does not inherently reveal private or sensitive information about that user. *Campbell v. Select Med. Corp.*, No. 2:25-cv-11408-MCS-PD, 2026 WL 2056651, at *3 (C.D. Cal. July 14, 2026) (Scarsi, J.). The same holds true with respect to browsing and searching for health-related products on a website. Merely looking for a health-related product does not necessarily reveal anything about Plaintiff's own health information. *Cf. Maghoney*, 2026 WL 497402, at *5 ("Plaintiff merely *searched* sensitive health related terms. . . . Dotdash's website is not a patient portal. And nothing about Plaintiff's searches indicates those searches were tied to his personal medical history." (citation omitted)). Nor does the one pre-workout product that Plaintiff purchased reveal anything about Plaintiff's sensitive medical information. Though other products Defendant sells, such as vitamins and health supplements, might reveal sensitive health information about the purchaser, Plaintiff presents no argument or explanation how a pre-workout product inherently implicates such concerns.

The Court concludes that Plaintiff has not alleged an injury in fact to his privacy.

## B. Economic Injury

Plaintiff also argues that he has established an actionable economic injury because the complaint alleges that Defendant unjustly derived an economic benefit

at Plaintiff's expense and that if Plaintiff had known about Defendant's data collection and transmission, he would not have purchased a product, or he would have paid less. (Opp'n 7–8; *see also* Compl. ¶¶ 170–82, 227–44.)

The Court addresses Plaintiff's unjust enrichment claim first. "California law recognizes a legal interest in unjustly earned profits." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). To establish standing under this theory, Plaintiff "must allege that (1) Defendant's actions were unjust, and (2) as a result, Defendant was enriched." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025). Here, Plaintiff cannot satisfy the first prong. Because Plaintiff fails to establish an actionable injury to his privacy interest, he fails to allege that any profit Defendant earned from his data was unjust. *See, e.g.*, *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-cv-05150-MMC, 2026 WL 932655, at *3 (N.D. Cal. Apr. 6, 2026) ("[P]laintiffs fail to adequately allege collection by USA Today of information in which plaintiffs had a legally protected privacy interest and, consequently, fail to allege any profit earned therefrom was unjust."); *Dawidzik*, 2025 WL 3786963, at *5–6 (concluding that defendant's interception of IP addresses and referrer URLs was insufficient to establish standing under unjust enrichment theory).

Plaintiff also contends he suffered an economic injury under either a benefit-of-the bargain or overpayment theory. (*See* Opp'n 7.) "[W]hen . . . Plaintiffs contend that class members paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so[,] they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (cleaned up); *accord Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145 (9th Cir. 2024). To allege an actionable injury under a benefit-of-the-bargain theory, "[a] plaintiff . . . must do more than allege that she did not receive the benefit she *thought* she was obtaining. The plaintiff must show that she did not receive a benefit for which she actually *bargained*." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (internal quotation marks and parenthetical omitted). Here, the complaint alleges that Plaintiff and the putative class members "would not have purchased from the Website if they had known that Defendant would not respect their privacy rights." (Compl. ¶ 243; *see also id.* ¶ 242 (alleging class members "would not have used the Website or made purchases thereon, if they had known that their privacy would not be respected").) This conclusory allegation is insufficient to establish that Plaintiff and the putative class members purchased from Defendant because of a representation that Defendant made about how it collects customers' data, or that Defendant's data collection practices were otherwise a part of the

bargain between the parties. *See McGee*, 982 F.3d at 706 ("McGee does not contend that Diamond made any representations about Pop Secret's safety. Although she may have assumed that Pop Secret contained only safe and healthy ingredients, her assumptions were not included in the bargain . . . . Thus, even if those expectations were not met, she has not alleged that she was denied the benefit of her bargain.").

In addition, Plaintiff's pleading insufficiently alleges economic injury under an overpayment theory. At the outset, the Court notes that Plaintiff's overpayment theory is not premised on an affirmative misrepresentation. Although the Ninth Circuit has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product," it is an open question "whether, in the absence of a misrepresentation, an overpayment theory of economic injury is viable" to establish Article III standing. *McGee*, 982 F.3d at 706–07. However, assuming such a theory is viable, a plaintiff must allege an injury from overpayment, such as that the product purchased "contained a hidden defect" or "was worth objectively less than what [a purchaser] paid for it." *Id.* at 707. Plaintiff alleges no such injury from the product he purchased here. (*See* Compl. ¶¶ 242–43.) Accordingly, Plaintiff fails to establish an actionable injury under either a benefit-of-the-bargain or an overpayment theory.

### C. Summary

Plaintiff has not alleged facts demonstrating that he suffered an actionable injury in fact. Accordingly, Defendant's motion to dismiss for lack of subject-matter jurisdiction is granted. Because this is a threshold defect that alone demands dismissal of the complaint, the Court does not reach any other issue presented in the motion.

## IV. LEAVE TO AMEND

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiff might be able to provide additional factual allegations concerning the persistent profiles and databases Defendant enriched using the data it collected, or Plaintiff might identify additional products he purchased from Defendant that reveal embarrassing, invasive, or otherwise private information about his medical information. Given the Ninth Circuit's policy of granting leave to amend

with "extreme liberality," *Jensen v. Brown*, 131 F.4th 677, 701 (9th Cir. 2025) (internal quotation marks omitted), the Court grants Plaintiff leave to amend.

## V. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted. Plaintiff may file an amended complaint within 14 days if he can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order. Plaintiff's amended complaint must be accompanied by a redline version tracking all changes. (Initial Standing Order § 10(a), ECF No. 10.) Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

**IT IS SO ORDERED.**